## Brown *et al.* *versus* Day *et al.*

78    129|
27 SC 388|
78    129
217    ⁵396

1. Surveys adjoining under warrants to S. Harvey and M. Harvey were in Northampton county in 1792; in 1798 Wayne county was cut off from Northampton, leaving, as was supposed, the S. Harvey in Wayne. It, with others, was sold to Kellogg, by the sheriff of Wayne county, for taxes in 1806, and conveyed by one deed; the tracts were actually in Northampton. Kellogg, in 1807, sold the two tracts to Stoddart. In 1814 Tyson conveyed them to James, reciting a deed from Stoddart of 1808 to him, endorsed on the deed from Kellogg. James built a saw-mill on the M. Harvey, on which houses also were built, and timber for the mill was cut from the tracts, which were afterwards conveyed as one tract and vested in plaintiff in 1859. The M. Harvey had been continually occupied till the trial. The S. Harvey was taxed as unseated. There had been no claim or payment of taxes by S. Harvey or any one under him; but Tyson and those under him paid such taxes as had been paid. *Held*, that plaintiffs had such color of title as authorized them to pay the taxes.

2. The continued possession of the M. Harvey and its joint ownership and use with the S. Harvey, raised the presumption that *all* the taxes had been paid under that title.

3. That the S. Harvey was assessed as unseated and the M. Harvey as seated, did not dissever the joint ownership so as forbid the claimant to pay taxes on the S. Harvey.

4. After a valid sale for taxes, it requires a clearer right to redeem, than to pay in self protection before sale.

5. The plaintiffs and their predecessors having claimed the land, paid taxes, &c., for so long a time, without an adverse claimant, a presumption of title was established.

6. Although plaintiff's title might not be maintained against the owner of the land; under the circumstances in this case, they could recover against an intruder.

7. By payment of taxes the plaintiffs were performing a public duty; the true owner's title would be saved from sale, and no injury be done to any one; as a *subsequent* purchaser from the treasurer had no rights to be protected.

8. Evidence of the loss of a paper, sufficient in this case to admit parol evidence of its contents.

9. Carter *v.* Tinicum Fishing Co., 27 P. F. Smith 310; Hastings *v.* Wagner, 7 W. & S. 215; Taylor & Dougherty, 1 W. & S. 324, followed.

March 15th 1875.    Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Monroe county:* Of July Term 1874, No. 1.

This was an action of ejectment, brought December 2d 1870, by Israel Day, Samuel Saylor, Thomas C. Davis, and William McMurtrie against John Brown, John Stoddart, and John R. Crellin, for a tract of land in Tobyhanna township, Monroe county, formerly part of Northampton, in the warrantee name of Samuel Harvey, containing 413¾ acres, bounded by lands in the warrantee names of Mary Harvey and others.

The case was tried January 1st 1874, before Streeter, P. J., of the Thirty-fourth district.

28 P. F. SMITH—9

[Brown *v.* Day.]

The plaintiff's evidence showed: warrant to Samuel Harvey, dated September 17th 1792, for 400 acres of land on Trout creek, near the river Lehigh, in Northampton county, and survey on the warrant November 19th for 413¾ acres.

Wayne county was cut off from Northampton county in 1798.

The tax books of Wayne county show that this tract was taxed in that county as unseated every year from 1799 to 1805 inclusive. Plaintiffs then gave in evidence, under objection and exception, a deed dated February 11th 1806, from Abraham Mulford, sheriff of Wayne county, to Silas Kellogg. The deed recited a warrant from the commissioners of that county, commanding him to sell for taxes such unseated lands as he should be directed by the commissioners; in pursuance of the warrant, he sold and conveyed to Silas Kellogg two tracts, surveyed to Samuel Harvey, one situated "between Trout creek and the Lehigh," containing 400 acres 150 perches; the other, situated "on Trout creek," containing 413 acres 113 perches; one tract surveyed to Mary Harvey, situated "on Trout creek," containing 403 acres 60 perches, and a number of other tracts designated in the deed.

· They gave in evidence, a deed dated January 13th 1806, from Silas Kellogg to John Stoddart, for two tracts on Trout creek, one in the warrantee name of Mary Harvey, for 403 acres 36 perches; the other, in the name of Samuel Harvey, for 413 acres 113 perches, being two of the tracts conveyed by Mulford to Kellogg: Also, deed dated October 23d 1813, from Jonathan Tyson to James Tyson for the undivided half of five tracts, viz.: Mary Harvey, 403 acres 60 perches, Samuel Harvey, 413 acres 113 perches, and three others designated in the deed; also, deed dated October 18th 1814, from Joseph Tyson to James Tyson, for the undivided half of two tracts, one in the name of Mary Harvey, for 403 acres 60 perches, the other in the name of Samuel Harvey, for 413 acres 113 perches; this deed contained a recital that Silas Kellogg sold the same to John Stoddart, and that John Stoddart, by deed poll endorsed on the deed from Kellogg, conveyed the same to Joseph Tyson and Jonathan Tyson on the 24th of May 1808.

A witness for plaintiff testified, that Joseph Tyson had claimed or owned the Samuel Harvey tract in Tobyhanna township, and, also, the Mary Harvey tract, which adjoined it,—sixty years before; he built a saw-mill on the Mary Harvey tract; the line of the Samuel Harvey was about 100 yards from the mill; Trout creek ran through the Mary Harvey; the Samuel Harvey came up to the bank of the creek; the Mary Harvey was partly in Tobyhanna and partly in Coolbaugh township. James Tyson came there twenty years after the first mill was built, and built a new saw-mill, and as soon as he finished the mill, sold to George Craig; he was there two years, and lumbered on the land.

Amos Moore came after him and lumbered several years; he

died whilst in possession; Day and Saylor next claimed the possession; about six or seven years before the trial Brown and Stoddart claimed possession. The dam on the Mary Harvey backed the water on the Samuel Harvey; several houses were built on the Mary Harvey; there was lumbering done on the tracts by Day and Saylor.

Another witness testified that Davis and McMurtrie came after Day and Saylor; there was a house built when the second mill was built, and it had been occupied down to the time of trial. In 1866 the two tracts were assessed to Day and Saylor; the Samuel Harvey as unseated and the Mary Harvey as seated.

The plaintiffs gave evidence from the tax books that the taxes on the Samuel Harvey, assessed as unseated in Tobyhanna, were paid in 1856-1857 by Amos Moore. They then gave in evidence: deed, June 3d 1847, James Tyson to George Craig, for the Mary Harvey, 403 acres 60 perches; the Samuel Harvey, 413¾ acres; the George Solliday, 34 acres, described together as one tract, containing 850 acres 25 perches. Deed, January 13th 1851, Craig to Amos Moore, for same property, described as one tract. Will of Moore, proved September 23d 1858, devising one half the property to Stephen B. Moore, and directing the other half to be sold by his executors. Deed, April 5th 1859, Stephen Moore to Day and Saylor, for an undivided half of "said 850 acress 25 perches;" same day, deed from executors of Amos Moore to Day and Saylor, for the other undivided half of "said 850 acres and 25 perches;" deed, March 2d 1868, Day and Saylor to Thomas C. Davis and William McMurtrie, for an undivided half of "said 850 acres 25 perches."

The defendants gave in evidence: assessment of the Samuel Harvey, 413¾ acres, as unseated in Tobyhanna township, for the years 1858 and 1859, and treasurer's sale and conveyance of the tract for taxes, on the 2d of June 1860, to S. J. Hollinshead; payment of taxes by Hollinshead for the years from 1860 to 1865, inclusive, and by Brown and Stoddart from 1866 to 1869, inclusive. Also, deed, December 30th 1865, from the widow and heirs of Hollinshead to Brown and Stoddart, for the several tracts of land, including the Samuel Harvey. Patent, May 5th 1870, to Brown and Stoddart, for the Samuel Harvey in Tobyhanna township; also, connected draft of nine tracts in Tobyhanna and Coolbaugh townships, one being Samuel Harvey, 413¾ acres, in Tobyhanna, and another, Samuel Harvey, 400 acres 115 perches, in Coolbaugh.

They further gave evidence for the purpose of showing that the Samuel Harvey was unseated; also, from the tax books, that the assessments from 1850 to 1861 in Tobyhanna township, in the names of Craig, Moore and Day and Saylor, were of seated land; there were no assessments to either of them of unseated land.

[Brown *v.* Day.]

In rebuttal the plaintiffs called James H. Stroud, who testified that he had received a letter from Day and Saylor in 1860; that he searched for it in all places where it was likely it would be found, and that he had been unable to find it; the search was two or three years after he got it; he had looked through his papers twice since; the last a short time before the trial, at W. Rees's office, in which he had kept his papers for the last six or seven years, and to which his papers had been removed from the bank, where he had before kept them; he had not searched at the bank for the letter since he had left it; two or three years after he received the letter he searched for it at the bank; he found the receipt, but did not find the letter; his letters were in bundles, endorsed; he took the bundles apart and looked for the letter, but did not open each letter; he kept his papers in a drawer in the bank vault; also private papers in the pigeon holes; the search was in the drawer, but none in the pigeon holes; he left the letters in the pigeon holes when he left the bank; at Rees's office he looked inside of every letter separately; the letters in the pigeon holes were to himself as cashier; did not keep his private letters in them.

After the adjournment of the court, the witness testified that since the adjournment he had searched in the pigeon holes; he inquired at the bank and learned that the letters had been destroyed; the cashier said the letters prior to 1866 had been put into the cellar, and afterwards had been sold to a man who bought paper and rags.

The plaintiffs then offered to give evidence of the contents of the letter; the defendants objected, on the ground that there was not sufficient evidence of its loss; the court admitted the offer, and sealed a bill of exceptions.

The witness testified that the letter was from Day and Saylor; it contained money to pay taxes, with a list of the tracts on which they were to be paid; he left the list with the treasurer, and told him he wanted to pay the taxes on Day and Saylor's land; the next day he paid the taxes and took a receipt; this was before the treasurer's sale in 1860; he had no recollections of the contents of the letter, except in a general way to pay their taxes; he had no recollection of the contents of the list except that it contained the warrantee names; there was one Samuel Harvey on the list; there were two Samuel Harvey tracts, one of which Day and Saylor did not own. When Day got the receipt he found it was for the one which he did not own; this was after the treasurer's sale, and after the day of redemption.

Saylor, one of plaintiffs, testified that, in 1860, he wrote to Stroud to pay their taxes in Monroe county, giving the names, amongst others, "our Trout creek lands, bought from the Moore family, giving the names of Daniel Ross, Mary Harvey and Samuel

[Brown *v.* Day.]

Harvey, to pay taxes on the same tract Moore paid on." He did not own the Samuel Harvey tract in Coolbaugh township.

They then gave in evidence the treasurer's unseated land-book of Monroe county, showing the payment of the taxes for 1858–1859 by Day and Saylor, on the Mary Harvey in Tobyhanna; and for the same years on the Samuel Harvey in Coolbaugh.

The defendants gave evidence, by the treasurer of 1860 and by his books, that the taxes of the tracts which Saylor had testified were contained in his letter, except Samuel Harvey in Tobyhanna, were paid by Day and Saylor, and that at the same time the tax on the Samuel Harvey, in Coolbaugh, had been paid by them, but that the tax on that in Tobyhanna had not been paid. They gave in evidence a copy of the receipt given June 9th 1860, the time of payment. It contained a list of the same tracts, including the Samuel Harvey of Coolbaugh, but not of Tobyhanna.

The first point of the plaintiff was affirmed; it was:—

" The plaintiffs have shown sufficient title upon which to recover the land in dispute against the defendants, unless the tax sale of 1860 legally passed the title to S. J. Hollinshead."

The second point was:—

" If the jury believe the taxes were actually paid by J. H. Stroud for Day and Saylor upon their unseated lands situate in Monroe county, in the month of June 1860, and, through mistake of the treasurer, the portion directed to be paid upon the Samuel Harvey tract owned by them was not credited to said tract, the sale for unpaid taxes to Mr. Hollinshead was void, and the plaintiffs are entitled to recover the land in dispute."

The court said:—

" We answer this point in the affirmative, unless the jury believe that Day and Saylor by their negligence in some degree occasioned the mistake."

The following were points of the defendants, with the answers:—

" The limitation of five years, fixed by the third section of the Act of 3d April 1804, is a bar to the recovery of the plaintiffs in this action."

Answer: " This point is denied."

5. " If the Samuel Harvey tract in Tobyhanna township was never in Wayne county, no title to it passed by the sheriff's sale for the non-payment of taxes in that county."

" This point is true as an abstract proposition, but has no application to this case."

The court charged:—

" The tax sale of 1806 in Wayne county, given in evidence by the plaintiff, was invalid so far as relates to the land in dispute in this case. The Samuel Harvey located in Tobyhanna township, was not located in Wayne county, and Silas Kellogg, the purchaser, took no title to this tract. [That tax sale is a matter of no im-

[Brown *v.* Day.]

portance in this case.]   On the 3d of June 1847 [James Tyson being in possession of several tracts, including the Samuel Harvey, conveyed them in a body to George Craig].   This conveyance embraced 850 acres and 25 perches, and included the Samuel Harvey, the Mary Harvey and the George Solliday tracts.   [Craig lumbered on these lands some three years, according to the evidence of Andrew Eschenbach, and then by deed dated 13th January 1851, conveyed the same property to Amos Moore.   Moore lumbered upon it several years and paid taxes upon it, and died in possession.]   The title of Moore was vested in these plaintiffs by deed of the 5th of April 1859.   [This recital of facts shows that the plaintiffs were in possession by color of title, and they may recover against an intruder without title.]

"Are the defendants intruders, or are they in possession by virtue of a title?   This question can only be considered by determining the validity of the tax sale of 1860 to Stroud J. Hollinshead.

"The tract was unseated, and, if the taxes had not been paid, that sale passed a good title to Stroud J. Hollinshead, who conveyed to these defendants.   Day and Saylor attempted to pay these taxes. They sent funds to James H. Stroud, and directed him to pay their taxes.   He paid the money to the county treasurer, but the taxes upon the Samuel Harvey in Tobyhanna township were not marked as paid.   The evidence shows that the money of Day and Saylor was applied to the payment of the taxes upon the Samuel Harvey in Coolbaugh township, a tract which the plaintiffs did not claim to own.   [The money seems to have been credited to the wrong tract.   Whose mistake was it?   Did the negligence of Day and Saylor contribute, in the least degree, to this mistake?]   If it did, the sale was good, and Hollinshead took a perfect title, which is now vested in these defendants.   But if Day and Saylor paid the full taxes, and they were credited to the wrong tract by the mistake of the treasurer alone, and the fault was exclusively his, then the payment was a good one, and the subsequent sale for taxes was void. * * *   By whose negligence were the taxes applied to the wrong tract?   If there was any negligence on the part of Day and Saylor, then this tax sale was good, though the treasurer may also have been guilty of gross negligence.   Did the list given to the treasurer by Stroud indicate clearly and plainly the tracts upon which the money was to be paid, so that no mistake could be made without gross inattention on the part of the treasurer?   If it did, and the mistake was exclusively the fault of the treasurer, the payment was a good one, and the tax sale void.   [The case turns upon the question of fact, which is entirely for the jury.   I repeat that if Day and Saylor, by the manner in which they prepared their instructions, contributed in the least degree to the mistake which seems to have been made in crediting the taxes, they are not enti-

[Brown v. Day.]

tled to recover, but if the fault was wholly and entirely that of the treasurer, the plaintiffs are entitled to recover."]

The verdict was for the plaintiffs.

The defendants sued out a writ of error; they assigned for error:—

1. The admission of Sheriff Mulford's deed in evidence.

2. Admitting parol evidence of the contents of the letter of Day and Saylor to Stroud.

3. Affirming plaintiff's first point.

4, 5. The answers to defendants' second and fifth points.

6–11. The parts of the charge in brackets.

*H. Green* and *W. Davis* for plaintiffs in error.—As to the sufficiency of the search for the letter of Day and Saylor: 1 Greenl. Ev., sect. 558; 4 Phillips Ev. (n. 246 to p. 230) 441; U. States *v.* Doebler, Baldwin R. 519; Sweigart *v.* Lowmarter, 14 S. & R. 200; McConahy *v.* Turnpike Co., 1 Penna. R. 426; Parkins *v.* Cobbett, 1 Carr. & P. 282; Judson *v.* Eslard, 1 Alab. 71; Parker *v.* Wilson, 1 Harr. 461. As to the plaintiffs' title by possession, they cited Warner *v.* Henby, 12 Wright 187; Hoffman *v.* Bell, 11 P. F. Smith 444; Wheeler *v.* Winn, 3 Id. 131; Orr *v.* Cunningham, 4 W. & S. 294; Coxe *v.* Sartwell, 9 Harris 480; Miller *v.* Shaw, 7 S. & R. 142; Carlisle *v.* Stitler, 1 Penna. R. 6; Adams *v.* Robinson, 6 Barr 271; Hole *v.* Rittenhouse, 1 Casey 493; Young *v.* Herdic, 5 P. F. Smith 176. Mere payment of taxes by one having no title will not give such actual possession as to oust the holder of the legal title: Naglee *v.* Albright, 4 Whart. 291; Urket *v.* Coryell, 5 W. & S. 83; Sorber *v.* Willing, 10 Watts 142. Color of title is applicable only to the tract actually occupied, not to contiguous tracts: Baker *v.* Findley, 8 Harris 168; Hole *v.* Rittenhouse, 7 Id. 305; Wright *v.* Guier, 9 Watts 172. The legal title cannot be ousted by mere constructive possession: Hawk *v.* Senseman, 6 S. & R. 21; McArthur *v.* Kitchen, 27 P. F. Smith 62.

*S. Holmes* and *H. W. Palmer*, for defendants in error.—An absent deed in a chain of conveyance, may be supplied by a long-continued claim of title, with acts of ownership uncontested by adverse pretensions from him who is supposed to have conveyed: Hastings *v.* Wagner, 7 W. & S. 215; Warner *v.* Henby, 12 Wright 187; Fox *v.* Thompson, 7 Casey 172. The warrantee name is of itself no evidence that the title belonged to the person named in the warrant: Glass *v.* Gilbert, 8 P. F. Smith 287; Strimpfler *v.* Roberts, 6 Harris 283. Against a naked intruder upon wild land a conveyance will be presumed from a warrantee who has not been heard of for a long time, to one who has been taxed, and the taxes paid by him and those claiming under him:

[Brown *v.* Day.]

Taylor *v.* Dougherty, 1 W. & S. 324; Kite *v.* Brown, 5 Barr 291; Hoey *v.* Furman, 1 Id. 295; Bell *v.* Hartley, 4 W. & S. 32; McCall *v.* Coover, 4 Id. 151. When several contiguous surveys become vested in one owner, they are to be treated as one tract; so that an entry upon any part under color of title is a disseisin of the whole: Hole *v.* Rittenhouse, 1 Casey 499; Nearhoff *v.* Addleman, 7 Id. 279. Naked possession is a good title against one putting occupant out of possession and showing no better title: Woods *v.* Lane, 2 S. & R. 53; Turner *v.* Reynolds, 11 Harris 199; Shumway *v.* Phillips, 10 Id. 151; McCalmont *v.* Venango C. & O. Co., 22 P. F. Smith 221. Although Amos Moore had been there by mere color of title, yet, having died in possession, those coming in under him had a better title than he by reason of the descent cast: Green *v.* Kellum, 11 Harris 259. The evidence of the loss of the letter was sufficient: Spalding *v.* Bank of Susquehanna, 9 Barr 28; Lee *v.* Lee, Id. 172; Flinn *v.* McGonigle, 9 W. & S. 75; Whitesell *v.* Crane, 8 Id. 369.

Chief Justice AGNEW delivered the opinion of the court, May 10th, 1875.

The argument in this case took a wide range, involving questions of abandonment, seisin, possession, casual entries, and other matters often important in determining questions of title. But the true attitude of this case presents only a single principal question, to wit: Whether the two plaintiffs, Israel Day and Samuel Saylor, had, in the year 1860, such claim or color of title to the Samuel Harvey tract as enabled them rightfully to pay the taxes. If they had, then the taxes being paid, and accepted by the treasurer in fact, and the misapplication of the money to the wrong tract being wholly his fault, as found by the jury, he had no right or authority to sell the land; the tax sale to S. J. Hollinshead, after payment of the taxes, was void, and the plaintiffs were entitled to recover: Bubb *v.* Tompkins, 11 Wright 359; Price *v.* Mott, 2 P. F. Smith 315.

Then, had these plaintiffs such claim or color of title as authorized them to pay the taxes on the tract warranted in the name of Samuel Harvey? Had they such a title as the law would enable them to protect by payment. This must be determined by the facts in evidence. A warrant was issued in the name of Samuel Harvey, on the 17th September 1792, for four hundred acres of land on Trout creek, near the Lehigh, in Northampton county, upon which a survey was made on the 19th of November 1792, of four hundred and thirteen and three-quarter acres and allowance, the same land now in controversy. Wayne county was cut off from Northampton in the year 1798, by a line from the Delaware river to the mouth of Trout creek, on the Lehigh, running by this tract, and leaving it, as it was supposed, until recently, in

Wayne county. It is found that a small portion only, probably ten or twelve acres, lie in Wayne county. In the year 1806 this Samuel Harvey tract and the Mary Harvey tract adjoining it on, the northwest, another Samuel Harvey tract, and seven other tracts in the same vicinity, were sold as unseated lands for taxes by the sheriff of Wayne county, and conveyed together in one deed to Silas Kellogg. In 1807, Silas Kellogg conveyed two of these tracts (the Mary Harvey and the Samuel Harvey, the one in controversy) to John Stoddart. By deed dated in 1814, Joseph Tyson conveyed to James Tyson the undivided half of these two tracts, reciting a deed poll from John Stoddart, dated 24th May 1808, endorsed on the deed to Silas Kellogg for the same two tracts to Joseph and Jonathan Tyson. Jonathan Tyson also conveyed his undivided half to James Tyson in the year 1813. Before Jonathan had parted with his title he had built a saw-mill on the Mary Harvey tract, within a few perches of the northwestern boundary of the Samuel Harvey tract. James Tyson built another saw-mill on the site of the old one, a few years prior to his sale to George Craig, and several houses also, which were occupied from time to time by tenants. The testimony tends to show that the boundary line between the Mary and Samuel Harvey tracts had not been marked on the ground. The pool of the saw-mill dam extended beyond this boundary into the Samuel Harvey tract, and the evidence shows that timber for the mill was cut on both tracts. In 1847, James Tyson conveyed to George Craig the two tracts, Mary and Samuel Harvey, and a third small parcel, surveyed in the name of George Solliday, containing thirty-four acres, all together, and described as one tract of eight hundred and fifty acres and twenty-five perches, and allowance. In 1851, George Craig conveyed the same property described as one tract to Amos Moore. In 1858, Amos Moore devised one-half of his property in Monroe county to Stephen B. Moore, and the other half to be sold by his executors. In 1859, Stephen B. Moore conveyed his undivided half of eight hundred and fifty acres and twenty-five perches to Israel L. Day and Samuel Saylor, and on the same day the executors of Amos Moore conveyed the other undivided half of the same property to Day and Saylor. Thus it appears that these two tracts, Mary and Samuel Harvey, passed together into a single ownership so early as the year 1814, and have so continued until the time of the treasurer's sale in 1860 to S. J. Hollinshead. From 1847 they were not only held together as a single ownership, but were with the small tract of thirty-four acres conveyed together as a single tract of eight hundred and fifty acres and twenty-five perches. The mill and houses on the Mary Harvey tract have been occupied under the several owners down to the time of trial, and timber cut on both tracts. No claim has been made by Samuel Harvey, the warrantee, or taxes

paid by him or any one under him or his title. He is wholly un-known, except as his name appears in the warrant. So far as taxes are shown to be paid by any one, it has been under the name of James Tyson and his successors, while the continued possession of the Mary Harvey warrant and joint ownership and use of it with the Samuel Harvey warrant, raise the presumption that all the taxes have been paid under that title. Here then was a bonâ fide claim of title under a sale supposed to be valid of the two tracts warranted in the names of Mary Harvey and Samuel Harvey, without molestation or interference of any one for a period of fifty-six years, and a joint ownership of the tracts as one, and control of both together as one body of land, conveying them together, and using them together by actual possession and improvement of one, and by backing up the water, and cutting timber upon the other. If such a claim of right cannot be protected from divestiture, by payment of taxes to prevent a sale, it is difficult to conceive of any interest in land but an absolute title, which can be so protected by payment. Had the division of Northampton county in 1798 thrown the Samuel Harvey tract entirely into Wayne county, as for many years it was believed to be, there would be no doubt of the right. Then the limitation of five years in the Act of 1804 would have con-firmed the sheriff's deed. Clearly it was color of title, and would give effect even to the general statute of limitations in case of actual possession, such as there was of the Mary Harvey warrant. How then can the mistake of locality in 1806 so derogate from the title to the Samuel Harvey warrant, as to prevent payment of the taxes upon it by the only known owner of it in 1860? Will a party claiming both tracts together as a whole, under a long line of conveyances, treating the ownership as one, and exercising control over both, be, by this mistake, when discovered after a lapse of years, stripped of his power to protect himself from a sale for taxes? The effect of such unity of title to several distinct tracts (fifteen in that case) was strongly stated by Chief Justice Lewis, in the mem-orable case of Hole *v*. Rittenhouse, 1 Casey 491, in explaining the decision in Kite *v*. Brown, 5 Barr 291. This effect was perhaps too strongly stated in reference to its influence upon the Statute of Limitations, as was said by Thompson, J., in Warner *v*. Henby, 12 Wright 187 ; but the principle of this unity of title and claim makes it clear that the owner may so treat his property. Thus, it was held in Burkholder *v*. Sigler, 7 W. & S. 154, that when an owner of a tract purchased a small parcel of adjoining land for the use of his mill, a levy and sheriff's sale carried both, though with-out any description of the small parcel. It is common practice to levy and sell as one a farm composed of several parcels, but used as a whole, even where one of the parcels consists of woodland only.

The fact that the Samuel Harvey tract was assessed as unseated,

[Brown v. Day.]

while the Mary Harvey was seated, does not dissever the joint
ownership, or forbid the claimant to pay the taxes on the unseated
tract.   Assessment is the act of the law.   The second section of
the Act of 1804 required the deputy surveyors to return to the
county commissioners all the lands in their districts, "which return
shall include a list of the number of acres contained in each survey
or warrant, and of the names and surnames of the original war-
rantees, the waters on which the same is situate, the lands contig-
uous thereto, and the township, if known, wherein the same may
lie."   This was a matter of public policy to obtain all the lands
liable to taxation, unseated lands at that time being generally wild,
and embraced in large unsettled districts in which even the town-
ships were often unknown.   This act was followed by that of 1806,
requiring the owners of lands to furnish a list to the commissioners
"of each and every tract" of unseated land held by them, with
the name of the warrantee, under a penalty of a fourfold tax to be
assessed on "every tract" not returned.   This is the very view
taken by the late Chief Justice Thompson, in Heft v. Gephart, 15
P. F. Smith 516-17.   The law of assessment, therefore, does not
change the right of the owner or claimant to pay the taxes accord-
ing to his ownership.   The question here is, had the plaintiffs a
right to pay the taxes of the Samuel Harvey tract, not how they
should be assessed ?

Bearing on this question are some of the decisions as to the right
of redemption.   Thus, in Shearer v. Woodburn, 10 Barr 511, a
purchaser from one who had purchased at sheriff's sale the claim
of one who had exercised acts of ownership over land, and been
the reputed owner for years, was deemed to have such title as en-
titled him to redeem.   Redemption presupposes a valid sale for
unpaid taxes, and requires a clearer right to redeem after such a
sale than to pay taxes before the sale, in self protection.

There is another class of cases bearing on this right to protect
such a claim of title, to wit, those establishing a presumption of
title arising from great lapse of time.   In this case there had been
no claim by the warrantee, or any one under him, for a period of
over eighty years at the time of trial, and no adverse claim or in-
terruption of the title by sheriff's sale in 1806, for fifty-four years,
at the time of the sale for taxes.   In Taylor v. Dougherty, 1 W.
& S. 326, a case of one claiming a warranted tract against an
intruder without title, Chief Justice Gibson said : "The land was
warranted and surveyed in 1773, in the name of Henry Kepple,
of whom nothing has since been heard during a period of near
seventy years, while they, under whose title the plaintiffs claimed,
exercised the only ownership over the warrant, of which, as a title
to wild land, it was susceptible.   They paid the only taxes for it
that ever have been assessed upon it, and this from 1805 till the
trial of the cause (1840).   Surely, if the beneficial ownership had

[Brown *v.* Day.]

been in Kepple, he or his representatives would have claimed it
long before.    The presumption from time alone of an intermediate
conveyance from him as a trustee, would be sufficient to go to a
jury as primâ facie evidence of the fact." Hastings *v.* Wagner, 7
W. & S. 215, is a still stronger case, for there the land had been
patented, and a deed from the third grantee, followed by a lapse
of thirty years, was presumed in favor of those claiming title under
it, while the actual possession of the land was in one claiming by
settlement and residence.    In that case, C. J. Gibson remarks,
"that to raise a presumption of a conveyance the question of pos-
session is between not these two (to wit, the claimant and the settlor),
but the presumptive grantor and the presumptive grantee." The
doctrine of presumption is laid down quite as strongly by C. J.
Black, in Strimpfler *v.* Roberts, 6 Harris 283.    But it is unneces-
sary to enlarge, as this subject has so recently undergone investi-
gation in the case of Carter *v.* The Tinicum Fishing Company, 27
P. F. Smith 310.    In the present case there has been not only a
continuous claim of title from 1806 to 1860, when these taxes were
paid ; but, also, the only possession of these two tracts ever known
to be had of them.

Another class of cases gives strength to the position of Day and
Saylor as claimants under color of title, viz., those holding that
even a treasurer's deed before the Act of 1815, or one which may
not be maintained against the owner of the land, will enable the
holder of the tax deed to recover against an intruder : Foster *v.*
McDivit, 9 Watts 344, 345.    Now, clearly, a title such as would
enable the possessor of it to recover against an intruder would be
sufficient to enable the same party to pay the taxes on the land he
can thus recover.    In doing this he is performing a public duty
and injuring no one, for the true owner is benefited by his act, and
his title saved from a sale, while the subsequent purchaser from the
treasurer had not then come into existence, and had then no rights
to be affected.    As the owner of even a defeasible title he ought to
be permitted to protect himself by payment, for the true owner
may never come, or may be barred by lapse of time, and the title may
never be defeated.    Thus we have in the case before us a holding
of the title for fifty-four years, repeated sales and conveyances of
the two tracts as one, a joint holding of both under the same title,
actual possession of one longer than to give title by limitation, and
the use of the other by means of backwater and cutting timber, a
dying seised and devise of both as one body of land, and subsequent
conveyances in continuation of this unity, and payment of taxes
as they were demanded, without any adverse claim of title what-
ever.    Clearly such a claim of ownership entitled Day and Saylor
to pay the taxes in 1860, and thus avert a sale.

In regard to the only other question, that as to the sufficiency
of the search for the letter to James H. Stroud, it seems to us,

[Brown *v.* Day.]

when all the witness testified to in his several examinations, for he was recalled twice, and made re-examination after the adjournment of the court, is considered, there was ample evidence of search to admit the contents of the letter; especially in view of the time which had elapsed, the removal of papers, destruction of those that remained in the bank, and the want of knowledge as to where the letter had really been deposited. It would consume unnecessary time and space to enter into a labored examination of the evidence.

Judgment affirmed.