## Henkels *v.* Philadelphia Title Insurance Company, Appellant.

Argued September 30, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*Herman H. Greenberg,* for appellant.

*I. Jerome Stern,* with him *Alan M. Spector,* for appellees.

OPINION BY WOODSIDE, J., January 14, 1955:

This is an appeal from the refusal of the Municipal Court of Philadelphia to enter judgment non obstante veredicto after the court sitting without a jury found in favor of the plaintiff in an action of assumpsit in the amount of $713.98.

There is no dispute over the relevant facts which are as follows:

In November of 1948 the plaintiffs employed the defendant title insurance company to examine and search the title and arranged for final settlement and conveyance of a certain specifically described plot of ground which they intended to purchase from Cecil G. Cadman and wife.

The defendant agreed to examine and search the title to said premises to discover and make known to plaintiffs any and all taxes, liens, encumbrances or defects in, on or against said title, and to arrange for the final settlement and conveyance of said premises from the then owners.

In consideration of defendant performing these services plaintiffs paid defendant its charges in the sum of $62.50.

The defendant thereupon issued to plaintiffs a settlement certificate which set forth the full and complete description of the lot referred to above. Following the description was the following:

"The premises are subject to the following incumbrances and claims which will be excepted in the policy unless removed:

| | |
|---|---|
| GROUND RENTS | None |
| REGISTERED TAXES | None |
| Pd by bo | |
| | |
| MORTGAGES | None |
| CURRENT TAXES | Year Due 1948 |
| Assessment | $1500.00 |
| City | $25.50 |
| School | $17.63 |

WATER RENTS AND SEWER RENTS Excepted—Vacant Ground.

"Any excess water or sewer rent since        or other charges, or additional water rent or sewer rent, which may be imposed hereafter by Water Bureau for current or prior years excepted. Removed MECHANICS' LIENS AND MUNICIPAL CLAIMS

Liability for work done or ordered to be done.

Off Afft Vacant Grd

JUDGMENTS AND BANKRUPTCIES        None"

There then followed various items under "Title Objection" of which the following is relevant:

"Company will only insure premises as having a Frontage on Ivy Hill Road 165' and a depth of 601' 7-3⁄8" the North East 23' 1⁄2 of premises as shown by

survey of 3-5-27 being expressly excepted from this insurance."

The title company excepted from insurance the 23½ foot strip (which we shall hereafter refer to as the strip) because the title to it was lost although it could be traced back to 1933.

Subsequent to the issuance of the above certificate the defendants took title to the aforesaid premises including the strip which the defendant "expressly excepted from insurance."

In March 1952 plaintiffs discovered that when they took title to the aforesaid premises there were tax liens of record on the strip for taxes from 1920 to 1946 which they subsequently paid in the amount of $713.98.

At the time the defendant issued the settlement certificate it knew there were tax liens on the strip but it did not reveal this fact to the plaintiffs. Instead it gave the plaintiff its certificate which immediately after a description of the entire tract *including the strip* said "The premises are subject to the following incumbrances and claims . . . registered taxes none."

The plaintiffs do not claim upon any breach of defendant's contract of title insurance, but upon defendant's breach of its contract as a conveyancer in failing to inform the plaintiffs of the existence of tax liens on the tract to be conveyed, which were liens of record and about which defendant had actual knowledge.

The real question here is whether under the circumstance of this case the statement in the "Settlement Certificate" that the defendant would "only insure" a part of the premises and "expressly excepted from this insurance" the part of the premises against which the tax liens were filed was notice to the plaintiffs that the title company was making no representations concerning the liens and taxes on the strip.

It is to be noted that the settlement certificate is not a policy of title insurance. The certificate is issued prior to settlement. The policy subsequent thereto. The defendant admits that it "orally agreed to examine and search the title to the said premises (referring to the entire tract) to discover and make known to plaintiff any and all taxes . . . in on or against said title," and that "in consideration of (its) performing said services plaintiff paid to (it) its charges in the sum of $62.50." This sum, the trial court found from the evidence was divided as follows: $40 for title examination; $5 for settlement hour; and $17.50 representing one-half of one percent premium of the purchase price for the entire tract (including the 23½ foot strip of $3500).

In the title objections defendant did not say it excepted the strip from the certificate. It only "excepted from this insurance" the strip. As we pointed out above the certificate and the insurance are two different things. The contract on which this action is founded not only precedes the contract of insurance but is independent of it. The undertaking to perform the duties of a conveyancer was independent of the contract to insure the title to the property and the negligence which resulted in the plaintiff's damage lay in the nonperformance of the duties of that employment. *Bodine v. Wayne Title & Trust Co.*, 33 Pa. Superior Ct. 68 (1907).

The certificate by describing the *entire* tract expressly included the strip in the certification even if it did except it from the insurance.

It would have been quite simple for the defendant to have exempted the strip from the certification as well as from insurance. It could have limited the description or it could have excepted it from certification as well as insurance under "Title Objections." It

did neither of these.

It is undisputed that defendant

1. Agreed to search the title to the entire tract and make known to plaintiffs all taxes and liens against it.

2. Did make such search and discovered the tax liens.

3. Was paid by plaintiffs for making the search.

4. Did NOT tell the plaintiff of the tax liens.

5. Gave a certificate in which it described the entire tract and then certified the taxes on "the premises" as none.

6. Represented (for a fee) the plaintiffs at the settlement when plaintiffs took title to the entire tract, and never breathed a word about the liens.

7. Thinks it should not be held liable because it told the plaintiffs it would not "insure" all the tract.

Under these facts the trial court was justified in finding for the plaintiff.

Nor is there merit to the contention that the plaintiff paid the taxes as volunteers and should therefore be denied recovery.

Plaintiffs, it appears, were in possession of the land, and even if they held title adversely to the real owner, they were within their legal rights to protect whatever interest they had in that land. "As the owner of even a defeasible title (they) ought to be permitted to protect (themselves) by payment, for the true owner may never come, or may be barred by lapse of time, and the title may never be defeated." *Brown v. Day,* 78 Pa. 129, 140 (1875).

Judgment affirmed.

Ross, J., Gunther, J. and Ervin, J., dissent.