## Heagy v. Smith

*Samuel F. Meisenhelder,* for plaintiffs.
*Thomas L. Kearney, III,* for defendants.
*Donald L. Reihart,* for additional defendant.

CASSIMATIS, *J.,* August 18, 1980—Plaintiffs, Richard and Judith Heagy, filed a complaint against defendants, Gregory and Nancy Smith and Carla and Gordon Melhorn (Melhorn-Smith), to which they filed an answer and counterclaim. Melhorn-Smith filed a complaint against additional defendant, Colonial Valley Abstract Company. Subsequent to the court's order disposing of the additional defendant's first set of preliminary objections, Melhorn-Smith filed an amended complaint against Colonial Valley. The additional defendant filed preliminary objections, in the nature of a demurrer to that amended complaint, which are before the court for disposition under our local rules.

At the outset, we set forth two fundamental principles which guide the court in considering the preliminary objections in the nature of a demurrer. First, all well-pleaded material facts alleged in the complaint, as well as all inferences reasonably deducible therefrom, must be deemed true. Secondly, preliminary objections should be sustained and a complaint dismissed only in cases which are clear and free from doubt. By this is meant that it must appear with certainty that upon the facts averred, the law will not permit recovery for plaintiffs (defendants Melhorn-Smith in this case). Any doubt should be resolved by a refusal to sustain the objections: Gekas v. Shapp, 469 Pa. 1, 364 A. 2d 691 (1976); Vitteck v. Washington Broadcasting Co., Inc., 256 Pa. Superior Ct. 427, 389 A. 2d 1197 (1978).

## I.

The first issue is whether defendants Melhorn-Smith have set forth sufficient facts to show a contractual duty to them on the part of the additional defendant. There are two subissues to this question: (1) whether additional defendant had a duty to insure, and (2) whether additional defendant has any duty with regard to its conduct of the title search. We agree with the additional defendant's contention that an insurance company "is not bound to insure any title which the court declares to be marketable," since it "has the right to select its own risk." 9 Appleman, Insurance Law and Practice §5203; Title Guarantee & Trust Co. v. Rudershausen, 164 N.Y.S. 15, 18 (1917). However, it does not follow therefrom that defendants Melhorn-Smith's claim should be dismissed. Although the company does not have a duty to insure every title declared marketable, it cannot make such a deci-

sion arbitrarily. In the Rudershausen case, supra, the court analyzed each reason given by the title insurance company for denying to insure title, to determine if the company's objections to insuring title were reasonable. Inasmuch as defendants Melhorn-Smith aver: (1) that they "retained and employed Colonial Valley to . . . insure, if title was found to be good and marketable," the properties in question, (2) that a "clear and marketable title could have been secured from the Plaintiffs" and (3) that additional defendant improperly refused to insure title, they have set forth sufficient facts to support a cause of action against additional defendant.

In addition to the duty to insure, this case also involves additional defendant's duty in determining the insurability of the title to the properties which were the subject of the sales agreement, insofar as defendants Melhorn-Smith allege that they "retained and employed Colonial Valley to determine the insurability of . . . the properties." It has increasingly become the practice for the title insurance companies to conduct the actual title search: Title Insurance: The Duty to Search, 71 Yale L.J. 1161 (1962). The courts of many jurisdictions have recognized that applicants for title insurance policies are not limited solely to the four corners of the policy. Rather, they also may have a cause of action for the failure of the title insurance company to fulfill its duty to conduct a reasonable search: Dorr v. Massachusetts Title Ins. Co., 238 Mass. 490, 131 N.E. 191 (1921); Shotwell v. Transamerica Title Insurance Co., 16 Wash. App. 627, 558 P. 2d 1359 (1976), aff'd, 91 Wash. 2d 161, 588 P. 2d 208 (1978). The Superior Court of Pennsylvania has also recognized a cause of action, independent of

the contract to insure title, for the title company's nonperformance of its duties of employment with regard to its contract as a conveyancer in making the title search: Henkels v. Philadelphia Title Insurance Company, 177 Pa. Superior Ct. 110, 110 A. 2d 878 (1955).

In addition, defendants' amended complaint makes a specific allegation that additional defendant was retained and employed by them to conduct a title search. Therefore, defendants Melhorn-Smith have stated a cause of action, and additional defendant's preliminary objections should be dismissed.

## II.

The second issue is whether the recording of the sales agreement would convert a tenancy by the entireties to a tenancy in common. Although defendants' amended complaint is somewhat unclear as to whose interest would be subject to the conversion, we will deal with this issue in view of the sellers' (plaintiffs Heagy) interest in the estate, inasmuch as defendants Melhorn-Smith cannot take an interest in the real estate as tenants by the entireties.

The moment an agreement of sale is executed and delivered, it vests equitable title of the property in the purchaser. The sellers are relegated to the position of trustees of the real estate, holding bare legal title for the purchaser who becomes trustee for the balance of the purchase price: Yannopoulos v. Sophos, 243 Pa. Superior Ct. 454, 459, 365 A. 2d 1312 (1976); Payne v. Clark, 409 Pa. 557, 187 A. 2d 769 (1963). In Yannopoulos, the court held that the execution of a sales agreement was sufficient to terminate a joint tenancy, and thus, to convert it to

a tenancy in common. The joint tenancy was terminated because the action of the parties destroyed the unity of interest, one of the four unities required for the existence of a joint tenancy, since "neither joint tenant possessed the equitable interest in it." 243 Pa. Superior Ct. at 460.

The four unities required for the existence of a joint tenancy are: (1) unity of interest; (2) unity of title; (3) unity of time; and (4) unity of possession: Yannopoulos, supra, at 459. These same unities are quite as essential for a tenancy by entireties: II American Law of Property §6.1. Inasmuch as tenants by the entireties are not permitted to sever the property by any individual action, and both Mr. and Mrs. Heagy entered into the sales agreement, the unity of interest has not been disturbed since both tenants continue to have the same interest in the property, albeit changed by the sales agreement. Thus, defendants Melhorn-Smith have not set forth sufficient averments to show a conversion from the tenancy by the entireties to a tenancy in common, and additional defendant's preliminary objection in this regard must be granted.

Accordingly, we will enter the following

## ORDER

And now, August 18, 1980, the preliminary objections of the additional defendant, Colonial Valley, in the nature of a demurrer, with regard to the contractual duty of additional defendant, are dismissed. The preliminary objection of the additional defendant in the nature of a demurrer with regard to the conversion of ownership status is granted.

The prothonotary is directed to give notice of the entry of this opinion and order as required by law.