Thomas A. DOONIS and Geraldine T. Doonis,
Appellants,

v.

MUTUAL TITLE COMPANY, a body
corporate, Appellee.

No. 3345.

District of Columbia Court of Appeals.

Argued Nov. 18, 1963.

Decided Jan. 8, 1964.

Cyrus A. Ansary, Washington, D. C., for appellants.

Leonard C. Collins, Washington, D. C., for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

MYERS, Associate Judge.

Appellants purchased a lot in Maryland from Warwick Village, Inc., which was to erect a house thereon for the buyers. The contract, *inter alia*, provided:

"The Purchasers are sold subject to: * * * (b) Any state of facts that an accurate survey may show, *provided title is not rendered unmarketable thereby.* * * * (e) Covenants, declarations, easements and restrictions affecting said premises, *provided same do not prohibit the erection and maintenance of the structures referred to herein.* * * *

* * * * * *

"The deed shall be the usual bargain and sale deed with covenant against grantor's acts in proper statutory short form for record and shall be duly executed, acknowledged, and have revenue stamps in proper amount affixed thereto by the Seller, at the Seller's expense, so as to convey to the Purchasers the fee simple of the said premises, free of all encumbrances, except as herein stated."
[Emphasis supplied.]

The contract also provided that purchasers would be liable for $100 settlement charges.

In February, 1959, after their house was completed on the lot, appellants met at the office of appellee Mutual Title Company in the District of Columbia where settlement was concluded. A survey plat (Engineer's Certificate) showing the existence of an easement for a storm sewer and a sanitary sewer on the lot in question was available to appellants at this meeting. As they were leaving the title company, they recalled that they had not secured the plat and immediately returned to the office where it was given to them. En route home, they examined the plat and found the easement noted thereon. No previous mention had been made about this easement. Appellants did nothing about the matter except to talk to a lawyer.

In the fall of 1959, the Washington Suburban Sanitary Commission installed a storm sewer on appellants' property and in June, 1960, a sanitary sewer. The owners claim that, as a result, they suffered damage to their yard and accumulated water in the cellar of their house.

On October 5, 1961, appellants filed suit for damages against appellee title company charging negligence, or, in the alternative, breach of contract in not informing them of the easement at the time of settlement. At conclusion of the trial, the jury were directed to bring in a verdict for the title company because, although liability had been established, appellants had failed to prove the proper measure of their damages.

A number of errors are claimed. Primarily appellants assert that there was competent evidence to prove their losses and that the trial judge had applied the wrong measure for damages in this case.

We do not reach the question of damages as we are of the opinion as a matter of law that a directed verdict was properly granted for failure of appellants to prove any liability upon the title company to respond in damages.

While it is customary in this jurisdiction that the cost of title examination and conveyancing be borne by the purchaser of real estate, it is not the invariable rule. The contract of purchase usually provides whether seller or buyer shall pay for such services by a title company. Home Title Ins. Co. v. Rinaldi, D.C.Mun.App., 81 A.2d 923. In the present instance, the contract between appellants and the seller, Warwick Village, Inc., is silent as to which party shall pay for these services but it did provide that appellants should pay $100 towards the total settlement charges, including "Examination of Title and Tax Cert." and that settlement should take place at the office of the Mutual Title Company. Therefore we may fairly presume that the seller ordered the examina-

tion of title and other related services by the title company incident to final settlement and conveyance of title but appellants paid a part of the costs thereof.

A right of action against the title company for omission to report any legal imperfection in the title of property exists only in favor of the real parties to the employment contract or their privies. National Savings Bank v. Ward, 100 U.S. 195, 25 L.Ed. 621. In view of the division of settlement expenses between the seller and appellants, we are satisfied that they were co-employers of the title company and therefore either was entitled to bring suit against it in event of breach of the employment contract.

It is generally held that one employed to examine title to real estate assumes the responsibility of discharging that duty with a reasonable degree of skill and care. For the negligent performance of this undertaking, the examiner is liable to his employer or co-employers for any loss caused by want of skill or omission of ordinary care under the circumstances. Though sounding in tort, the liability is in reality contractual, resting on the employment agreement. Long v. American Savings & Loan Association, D.C.Mun.App., 151 A.2d 770, 772.

In the present case, was there a duty breached by the title company under its employment contract to research and survey the title to the lot sold to appellants by Warwick Village, Inc.? We think not. Unfortunately the record contains no specific testimony or exhibits setting forth the exact terms of employment so we must look to the terms and conditions of the contract of purchase. It was appellee's responsibility to exercise reasonable skill and care in its examination of the title and related records in order to discover and report any legal imperfection which might render the land unmarketable. However, none was revealed.

The contract of purchase provided that appellants would take title subject to any state of facts that an accurate survey may show, provided title was not rendered "unmarketable" thereby. Hence, an unmarketable title was the only provision which would have relieved appellants from their contractual obligation to buy the lot from the seller.

The record establishes that the title company did secure an accurate survey plat showing the existence of the easement in question. The easement providing for the right to install a storm sewer and a sanitary sewer on the lot servicing both it and the adjacent land in the area of the real estate development was made known to appellants by their examination of the plat. They did nothing to repudiate the sale of the lot because of any alleged imperfection of title. In fact, the transfer was affirmed and they occupied the house erected on the lot. It was not until after the passage of more than two years, during which time the sewers were installed, that they complained they had sustained damage due to the sewer installations by the Washington Suburban Sanitary Commission. Then this suit was filed against the title company.

Appellants' real complaint is not with the existence of an easement on the lot they bought, but with the alleged careless manner in which the sewers were installed. The title company had no connection with or responsibility for this and therefore was not subject to respond for damages arising from the installations.

Absent any valid showing of negligence or breach of duty owed to appellants in connection with the settlement of their purchase of the lot in Maryland from Warwick Village, Inc., the trial judge properly directed a verdict in favor of the title company, although not on the grounds stated therein.

Affirmed.