WILLIAMS v POLGAR

Opinion of the Court

1. JUDGMENT—ACCELERATED JUDGMENT—PLEADING—INFERENCES.

Under a motion for accelerated judgment by defendants the facts well pleaded by plaintiffs and the reasonable inferences therefrom must be considered most favorably towards plaintiffs.

2. NEGLIGENCE.

Where there is a person negligently injured by another, normally there is recovery therefor.

3. ABSTRACTS OF TITLE—LIABILITY—THIRD PARTY—PRIVITY.

The requirement of privity has been categorically eliminated; therefore, liability will apply to a negligent abstracter who can reasonably foresee reliance by a third party on its abstract.

4. NEGLIGENCE—DUTY OF CARE—CONTRACTS—COMMON LAW—TORTS—BREACH OF CONTRACT.

While a duty of care, as an essential element of actionable negligence, arises by operation of law, it may and frequently does arise out of a contractual relationship, the theory being that accompanying every contract is a common-law duty to perform with ordinary care the thing agreed to be done, and that a negligent performance constitutes a tort as well as a breach of contract.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 47 Am Jur 2d, Judgments § 971.
  61 Am Jur 2d, Pleading §§ 55, 56.
[2] 57 Am Jur 2d, Negligence § 384.
[3] 1 Am Jur 2d, Abstracts of Title §§ 15–18.
[4] 57 Am Jur 2d, Negligence § 47 *et seq.*
[5, 9, 11] 1 Am Jur 2d, Abstracts of Title §§ 12–27.
[6] 1 Am Jur 2d, Abstracts of Title § 23.
[7] 1 Am Jur 2d, Abstracts of Title §§ 3, 14.
[8, 12] 1 Am Jur 2d, Abstracts of Title § 24.
[10] 1 Am Jur 2d, Abstracts of Title §§ 19, 24.
[13] 1 Am Jur 2d, Abstracts of Title § 14.

5. ABSTRACTS OF TITLE—TORTS—CONTRACTS—NEGLIGENCE—MISREPRE-
SENTATION.

The particular type of tort action arising from breach of an
abstracter's contractual duty is an action in negligent misrepre-
sentation.

6. ABSTRACTS OF TITLE—TORTS—CONTRACTS.

The tort cause of action created by an abstracter's nonfeasance or
misfeasance stems from the contractual duty originally im-
posed and does not render an abstracter liable for action
beyond such contractually-imposed duty, *i. e.,* to perform in a
diligent and reasonably skillful workmanlike manner.

7. ABSTRACTS OF TITLE—CONTRACTS—NON-CONTRACTING PARTIES.

Every contract of employment includes an obligation, whether
express or implied, to perform in a diligent and reasonably
skillful workmanlike manner; this standard governs an ab-
stracter's legal obligation to non-contracting parties.

8. ABSTRACTS OF TITLE—BREACH OF CONTRACT—ACTION—GRANTEES.

The cause of action arising from breach of the abstracter's
contractual duty runs to those persons an abstracter could
reasonably foresee as relying on the accuracy of the abstract
put into motion; the particular expert-client relationship accru-
ing to a professional contract to certify the condition of the
record of title reposes a peculiar trust in an abstracter which
runs not only to the original contracting party; there is a
clearly foreseeable class of potential injured persons which
would obviously include grantees where his or her grantor or
any predecessor in title of the grantor has initiated the con-
tract for abstracting services with the abstracter.

9. LIMITATION OF ACTIONS—CONTRACTS—TORTS.

A breach of duty creating a cause of action *in a contract action*
would date from the actual act of omission or misrepresenta-
tion; the cause of action *in a tort action* runs from the date the
tort was committed not the date the actor put his or her force
wrongfully into motion.

10. LIMITATION OF ACTIONS—ABSTRACTS OF TITLE—MISREPRESENTA-
TION—BREACH OF DUTY—PROXIMATE CAUSE—DAMAGES.

The statute of limitations in an abstracter liability action does
not begin running until the point where plaintiff knows or
should have known of a negligent misrepresentation; at that
point, four elements are satisfied: a legal duty exists, such duty
is breached, a proximate causal relation is established (if plain-

tiff can show reliance on the abstract), and the plaintiff then is, or should be, aware of any resultant damages.

11. ABSTRACTS OF TITLE—TORTS—MISREPRESENTATION—CONTRACTS— LIMITATION OF ACTIONS.

There is a valid tort cause of action in the nature of negligent misrepresentation arising from a contract for an abstracter's services in favor of a non-contracting damaged third party whose reliance on the abstract could be foreseen; in a tort action of this nature, the statute of limitations begins running from the date the injured party knew or should have known of the existence of the negligent misrepresentation.

DISSENTING OPINION

M. S. COLEMAN, J.

12. LIMITATION OF ACTIONS—ABSTRACTS OF TITLE—CONTRACTS— BREACH OF CONTRACT—STATUTES.

*Plaintiffs' action against an abstracter for damages for not including a deed in an abstract of title is premised on a breach of contractual duty; a statute provides that no person may bring or maintain any action to recover damages for breach of contract unless he commences the action within six years and plaintiffs' action accrued, as provided by another statute, at the time the wrong upon which the claim is based was done regardless of the time when damage results; therefore plaintiffs' claim accrued, at the very latest, more than six years prior to institution of suit and accelerated judgment for defendant was properly granted (MCLA 600.5807, 600.5827).*

13. LIMITATION OF ACTIONS—LEGISLATION—JURISDICTIONAL LIMITATIONS—STATUTES—SUPREME COURT.

*The Legislature is entitled to place limitations upon the bringing of actions in the courts of the state of Michigan; indeed, it is the duty of the Legislature to impose jurisdictional limitations in such matters and although individuals may differ as to the wisdom of legislation, it is not the function of the Michigan Supreme Court to rewrite it.*

Appeal from Court of Appeals, Division 2, Danhof, P. J., and Levin and Borradaile, JJ., reversing and remanding Macomb, Howard R. Carroll, J. Submitted May 10, 1973. (No. 14 May Term 1973, Docket No. 54,422.) Decided February 14, 1974.

43 Mich App 95 affirmed.

Complaint by ·Walter E. Williams, Violet V. Williams, and Whiteway, Inc., against Julia Polgar for damages for breach of contract and American Title Insurance Company, for damages for not including a deed in an abstract of title. Accelerated judgment for defendants. Plaintiffs appealed to the Court of Appeals. Reversed and remanded. Defendant American Title Insurance Company appeals. Affirmed and remanded to circuit court for further proceedings.

*Perica, Breithart & Carmody,* for plaintiffs.

*Rowe, Talon & Jones, P. C.,* for defendant American Title Insurance Company.

WILLIAMS, J. While important, the issue in this case is a relatively narrow one.

Michigan already permits a buyer of property who has relied on a faulty abstract to his detriment to recover from the abstracter, even though there is no clear contractual privity between them, if the abstracter in fact knew the buyer would rely on the abstract.[1]

This case presents the issue whether a faulty abstracter should likewise be liable to a buyer *he should have foreseen would rely* on the abstract as well as to the buyer *he knew would rely* on it. The question boils down to whether there should be liability for *foreseeable* as well as *known* reliance.

This Court has answered that question affirmatively in a related fact situation, and in categorical terms relieved Michigan jurisprudence of the re-

[1] *See* discussion of *Beckovsky v Burton Abstract & Title Co,* 208 Mich 224; 175 NW 235 (1919), *infra.*

strictions of "privity".[2] In this opinion, we reaffirm our general decision eliminating privity and specifically apply it to abstracters.

There is a second issue in this case. When does liability accrue and what statute of limitations applies?

## I —FACTS

Plaintiffs Williams purchased certain property situated in the City of Warren, Macomb County, from defendant Polgar on a land contract dated August 1, 1959. At the time of purchase, as provided in the land contract, defendants furnished to plaintiffs an abstract of title certified to July 15, 1959 by Abstract and Title Guaranty Company. This abstract was originally issued on February 4, 1926 by the Macomb County Abstract Company and was extended by said company in 1936, 1937, 1943, 1944, 1945, 1946, 1948, 1951, and 1952. Defendant American Title Insurance Company is the successor in interest to Macomb County Abstract Company.

The abstract of title failed to include a deed dated May 1, 1926 which was recorded on May 24, 1926 in Liber 242 of Deeds at page 174 of Macomb County records. This deed conveyed the southerly 60 feet of the property in question to the Macomb County Board of Road Commissioners.

After execution of the land contract on August 1, 1959, plaintiffs learned, allegedly for the first time, of the existence of this omitted deed. As the result thereof, plaintiffs claim they were required to completely remove a building and that certain other damages were incurred.

Plaintiffs filed this action on April 21, 1971. All

[2] *Spence v Three Rivers Builders & Masonry Supply, Inc,* 353 Mich 120; 90 NW2d 873 (1958).

defendants filed motions for accelerated judgment based on the statute of limitations. The trial court held that plaintiffs' cause of action accrued no later than the execution of the land contract on August 1, 1959. Thus accelerated judgment was granted defendants. Plaintiffs were non-suited. The Court of Appeals reversed and remanded. 43 Mich App 95; 204 NW2d 57 (1972). Defendant American Title Insurance Company requested leave to appeal to this Court which was granted on December 12, 1972. 388 Mich 812 (1972).

## II —EFFECT OF ACCELERATED JUDGMENT

Under a motion for accelerated judgment by defendants the facts well pleaded by plaintiffs and the reasonable inferences therefrom must be considered most favorably towards plaintiffs. As the complaint adequately alleges the title company's negligent misrepresentation in the abstract, plaintiffs' reliance thereon and the damage caused thereby as well as the other matters appearing in the above statement of facts, this case presents at this point no dispute as to facts.

Where there is a person negligently injured by another, normally there is recovery therefor. *Ubi injuria, ibi remedium.*

Defendant title company here, however, seeks immunity from liability for the injury it caused plaintiff buyers, pleading two defenses. First, defendant pleads it is immune from suit because it is not in contractual privity with plaintiffs. Second, defendant pleads it is immune from suit because of the statute of limitations. We disagree.

## III —DEFENSE OF PRIVITY

A. *Cessante Ratione Legis, Cessat et Ipsa Lex*[3]

The early common-law rule restricting liability

to those in contractual privity with an abstracter was based on a system where abstracts would only be used by real estate owners. 1 Fitch, Abstracts and Titles to Real Property, § 9, p 9; and see § 3. As time went on the actual usage of abstracts and the class of people relying on them expanded. This historical change in circumstance and the corresponding change in law is noted in numerous cases of which the following two quotations will serve as examples. The first, *Brown v Sims,* 22 Ind App 317, 325; 53 NE 779; 72 Am St Rep 308 (1899) illustrates a judicial expansion of liability to a known third-party beneficiary:

"It is very well known that the owner of real estate seldom incurs the expense of procuring an abstract of the title from an abstracter, except for the purpose of thereby furnishing information to some third person or persons who are to be influenced by the information thus provided. If the abstracter in all cases be responsible only to the person under whose employment he performs the service, it is manifest that the loss occa-sioned thereby must in many cases, if not in most cases, be remediless."

The second, *Gate City Abstract Co v Post,* 55 Neb 742, 746; 76 NW 471 (1898), represents judi-

---

[3] Justice Cardozo in extending a weigher's liability to a known third-party beneficiary against the defense of privity, among other reasons stated:

"Constantly the bounds of duty are enlarged by knowledge of a prospective use."

In making this statement he relied upon, as we shall, a products liability case, his famous case of *MacPherson v Buick Motor Co,* 217 NY 382; 111 NE 1050; 1916F LRA 696 (1916). *Glanzer v Shepard,* 233 NY 236, 240; 135 NE 275; 23 ALR 1425 (1922). In dicta, Judge Cardozo found this same lack of immunity specifically applicable to abstracters:

"No such immunity, it has been held, protects the searcher of a title, who, preparing an abstract at the order of a client, delivers it to another to induce action on the faith of it." (Citations omitted.) 233 NY 240.

cial support of legislation that purports to create liability "for the payment by such abstracters of any or all damages that may accrue to any party or parties, by reason of any error, deficiency or mistake in any abstract":[4]

"By the common law, as we interpret it, the owner of real estate could only utilize an abstract as an argument to reinforce his own assertions concerning the state of his title. It might be persuasive, but was without legal efficacy. He may now use it as evidence in an action to enforce the specific performance of a contract of sale, and in every other form of action in which the validity of his title or the existence or non-existence of liens or incumbrances are questions directly or collaterally involved. The right to use an abstract as evidence is not even limited to the person to whom it is issued. Any one may use it, and any one against whom it is employed may be injured in consequence of the certificate being false. Having thus widened the abstract's sphere of action, it was quite natural that the legislature should also widen the abstracter's liability."[5]

---

[4] Fifteen states have abstracter bond and liability statutes of this nature. Ark Stats Ann 71-106; Colo Rev Stats 1963 Chpt 1-1-5; Idaho Code § 54-101; Kans Stat Ann 58-2802; Minn Stat Ann § 386.66; Mont Rev Code § 66-2113; Rev Stat Neb § 76-501; Nev Rev Stats, Title 19, § 240.330; New Mex Stat Ann § 70-2-6; ND Cent Code § 43-01-11; Okla Stat Ann Title 1 § 1; Oreg Rev Stats § 30.750; SDCL § 36-13-15; Utah Code Ann § 1-1-12; Wyo Stat § 33-12. A typical example of such a statute is Idaho Code § 54-101:

"*54-101. Abstracters to give bond.*—It shall be a misdemeanor for any person or persons to engage in the business of compiling abstracts of title to real estate in the state of Idaho, and demand and receive pay for the same, without first filing in the office of the county recorder of the county in which such business is conducted, a surety bond to the state of Idaho, in the penal sum of $10,000, with a surety company authorized to do such business in Idaho as security conditioned for the payment by such abstracters of any or all damages that may accrue to any party or parties, by reason of any error, deficiency or mistake in any abstract or certificate of title, made and issued by such person or persons."

[5] Note also the discussion of the rationale for the Wyoming abstracter liability statute in *Abstracter's Liability in Examination of Title,* 6 Wyo LJ 184–185 (1952):

"The use of abstracts of title has expanded greatly in conveyancing

Responding to the actual change in use of abstracts and the additional classes of persons relying on them, at least six general court-created exceptions have been grafted onto the supposed common-law requirement of strict contractual privity. These exceptions include:

(1) abstracter's fraud or collusion,

(2) theory of third-party beneficiary contracts,

(3) theory of foreseeability of use by a third-party,

(4) actual knowledge or notice of third-party,

(5) agent for disclosed or undisclosed principal contracting with an abstracter, and

(6) reissuance or recertification of an abstract.

See *Liability of Abstracter-Privity,* 34 ALR3d 1122, 1131, for cases supportive of each of these exceptions. See also 12 Vand LR 783 (1959).

Whereas the common-law rule limiting abstracter liability provided immunity from all who were injured by a faulty abstract except those in actual contractual privity, of the 35 jurisdictions (outside of Michigan) addressing themselves to this matter only seven retain a rule of strict contractual privity: Arizona, California, Florida, Illinois, Ohio, Texas and Wisconsin.[6] On the other hand, 11 extend liability to known third-parties relying thereon: Alabama, District of Columbia, Hawaii, Idaho, Indiana, Maryland, Missouri, New Jersey,

---

transactions in recent years. The legislature took the increased use of abstracts into consideration and expanded their value in that an abstract could be used as evidence in any case in which validity of title was questioned either directly or collaterally, by anyone directly interested, whether the person to whom the abstract was issued or not. Having thus widened the abstract's sphere of use it was natural that the legislature should include within the protection of this statute any person who might suffer from fraud or mistake of the abstractor."

[6] See Appendices A and B.

New York, Pennsylvania and Tennessee.[7] Two jurisdictions have allowed recovery by undiscovered principals: Iowa and Washington.[7.5] Fourteen purport to extend liability by statute to "any person" relying on the abstract: Arkansas, Colorado, Kansas, Minnesota, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Utah and Wyoming.[8] And one jurisdiction extends liability to foreseeable relying third-parties by court decision: Louisiana.[9]

### B. *Michigan Has Abolished Privity Requirement*

Michigan ended the last century and began this one firmly wed to the rule of contractual privity immunizing abstracters. *Smith v Holmes,* 54 Mich 104; 19 NW 767 (1884); *Kenyon v Charlevoix Improvement Co,* 135 Mich 103; 97 NW 407 (1903). By the end of the second decade it reluctantly broke away from strict privity in favor of a known third-party beneficiary. *Beckovsky v Burton Abstract & Title Co,* 208 Mich 224; 175 NW 235 (1919). Michigan thereby joined a category of 11 other jurisdictions just noted who had opened recovery to parties the abstracter knew would rely on the abstract. In *Beckovsky,* the plaintiff buyer actually accompanied the seller to the office of defendant title company and said he wanted an abstract but the contract in all truth was between the seller and the title company with the seller paying the title company for its work, although in order to avoid the title company's defense of privity, the trial court graciously put that question to the jury.

So *Beckovsky* extends liability to the faulty

---

[7] See Appendices A and B.

[7.5] See Appendices A and B.

[8] See Appendices A and B.

[9] See Appendices A and B.

abstracter who knows a third-party beneficiary will rely on its abstract. The question remains, will liability likewise apply to the faulty abstracter who can reasonably foresee reliance by a third-party.

Michigan answered this question affirmatively in 1958 and categorically eliminated the requirement of privity. *Spence v Three Rivers Builders & Masonry Supply, Inc,* 353 Mich 120; 90 NW2d 873 (1958). This was done in a products liability case where a plaintiff not in privity with a defendant building supply company purchased cinder-block building materials through a third-party building contractor. The supplies subsequently proved faulty to plaintiff's damage, just as the abstract did in the instant case. Defendant in that case, like the defendant in the instant case, relied on privity to bar plaintiff's action.

Justice VOELKER, speaking for this Court, recognized that privity was more honored by exceptions than by the rule. However, this Court decried continued evasion of the rule and faced the issue squarely, holding that privity was an unnecessary bar to recovery. Justice VOELKER spoke forthrightly to the point as follows:

"We now proceed to face up to the big issue in this case: Should lack of privity bar this action as a matter of law?

"As the court below correctly observed, there is little doubt that in the past our court has for the most part devotedly followed the 'general rule' and been reluctant to permit a third person 'not in privity' to recover from a manufacturer on a theory of negligence or implied warranty.

\* \* \*

"Saddled with such a doctrine and its hair-splitting exceptions, it is not surprising that while a few of our

decisions have afforded passing illusory comfort to all, certainty has been afforded to none. The reason is simple: A court lacking a clear and understandable rule of its own can scarcely be expected to impart it to others. Legal confusion has inevitably resulted. Aggrieved plaintiffs have scarcely known whether to sue in deceit or fraud or for negligence or for breach of warranty—or indeed whether it was worthwhile to sue at all.

"Our court perhaps uttered the towering legal understatement of the year (1924) when in *Hertzler v Manshum,* 228 Mich 416 [200 NW 155] (a poison flour case), we observed that cases in this category 'appear hopelessly at variance.' We there reverently discussed the accepted theory of claimed nonliability (our old friend, lack of privity) and then proceeded to hold that food cases were an exception (pp 421, 422) 'and there only by reason of a want of a high degree of care.' While that case is not alone, it is typical of the curious things courts can bring themselves to do and say when they try vainly to wed the outmoded thinking and legal cliches of the past to the pressing realities of modern life.

"Consider what was just said in *Hertzler.* 'Higher care' was there our way around privity. This is a beguiling notion, but we find ourselves unable to discover why the imposition by judicial fiat of a mystical higher degree of care should magically dissolve the need for privity, as just asserted in *Hertzler.* Why should this be so? Either lack of privity should always be a defense in these cases or it never should be.

\* \* \*

"In this case it appears that there was a lack of due care. Merely to describe what happened to the blocks should be showing enough on that score—but here the defendant admitted that he had inspected or tested neither the raw materials nor the finished blocks. Granting the learned trial court's understandable bewilderment under our past decisions, we think it should have permitted recovery either on a theory of negligence or implied warranty and should also have proceeded to take such further proofs on plaintiff's dam-

ages as may have been necessary." 353 Mich 121, 126, 128–129, 135.

C. *Privity Conclusion*

Michigan's own jurisprudence records the categorical elimination of privity. This Court had previously extended abstracter liability consonant with the historical growth in reliance and use of abstracts and the corresponding changes in the law to known relying third-parties. Confronted now as of first impression with the question of abstracter liability to foreseeable relying third-parties, we have but to apply our own persuasive precedent of categorical elimination of privity to an analogous situation, and we do so.

## IV —ABSTRACTER LIABILITY IN TORT FOR NEGLIGENT MISREPRESENTATION

On the basis of *Three Rivers* and a plethora of jurisdictions in the United States a good case is made for abolishing contractual privity and permitting suit in "negligence or implied warranty" by any foreseeable third-party who would and does rely on the abstract. We consider now the matter of suit in "negligence".

In *Clark v Dalman,* 379 Mich 251; 150 NW2d 755 (1967), for example, it was held that breach of a contract to repair, clean, and paint a water storage tank, also gave rise to an action in tort in favor of a non-contracting third-party. Chief Justice (then Justice) T. M. KAVANAGH explained this relationship of a tort action to the underlying contract:

"Actionable negligence presupposes the existence of a legal relationship between parties by which the injured party is owed a duty by the other, and such duty must be imposed by law. * * * Such duty of care may be a

specific duty owing to the plaintiff by the defendant, or it may be a general one owed by the defendant to the public, of which the plaintiff is a part. *Moreover, while this duty of care, as an essential element of actionable negligence, arises by operation of law, it may and frequently does arise out of a contractual relationship, the theory being that accompanying every contract is a common-law duty to perform with ordinary care the thing agreed to be done, and that a negligent performance constitutes a tort as well as a breach of contract.* But it must be kept in mind that the contract creates only the relation out of which arises the common-law duty to exercise ordinary care. Thus in legal contemplation the contract merely creates the state of things which furnishes the occasion of the tort. This being so, the existence of a contract is ordinarily a relevant factor, competent to be alleged and proved in a negligence action to the extent of showing the relationship of the parties and the nature and extent of the common-law duty on which the tort is based." (Emphasis added.) 379 Mich 251, 260–261.

This Court recently reaffirmed these principles, citing *Clark,* in *Nash v Sears, Roebuck & Co,* 383 Mich 136, 143; 174 NW2d 818 (1970). See also *Nicholson v Han,* 12 Mich App 35, 43; 162 NW2d 313 (1968), and *Talucci v Archambault,* 20 Mich App 153, 161; 173 NW2d 740 (1969).[10]

---

[10] The language in *Talucci* is worthy of note for the clarity with which it makes this point. *Talucci* was a suit by an employee against an independent contractor hired by plaintiff's employer. The Court, in finding a tort cause of action stated:

"The duty allegedly owing is that which accompanies every contract, a common-law duty to perform with ordinary care the thing agreed to be done. * * * Those foreseeably injured by the negligent performance of a contractual undertaking are owed, as in this case, a duty of care." 20 Mich App 153, 161.

For suit in tort, *see also Chicago R I & G R Co v Duncan,* 273 SW 908, 910 (Tex Civ App 1925), where a Texas appellate court succinctly held:

"The making of the contract involved was accompanied with a common-law duty to perform the work agreed to be done, to wit, the making of the abstract with skill, reasonable expedience, and faithfulness, and the negligent failure on the part of appellee's testator to

With respect to the particular type of tort action arising from breach of an abstracter's contractual duty, we hold it to be an action in negligent misrepresentation. Numerous cases and law review articles have debated the precise tort cause of action most appropriate in this context.[11] The theories of fraud, deceit, warranty, and strict liability have all been the subject of extensive discussion with respect to professional misrepresentations of this sort. None of these theories has been found to adequately deal with this particular problem; negligent misrepresentation, on the other hand, precisely fits this situation.

The obvious difficulty with a fraud or deceit action is the requisite element of *scienter.* The issue we are dealing with in the instant case does not, on the pleadings, involve *intentional* misrepresentation.[12] To supply the element of intent constructively is to do great violence to existing law

---

include in the abstract made by him the omitted deed which caused appellant to sustain damage, as alleged, was a tort as well as a breach of the contract."

*And see Hawkins v Oakland Title Insurance & Guaranty Co,* 165 Cal App 2d 116; 331 P2d 742 (1958); *Viotti v Giomi,* 230 Cal App 2d 730; 41 Cal Rptr 345 (1964); *Chun v Park,* 51 Hawaii 462; 462 P2d 905 (1969); *Hillock v Idaho Title & Trust Co,* 22 Idaho 440; 126 P 612 (1912). *Also see Arizona Title Insurance & Trust Co v O'Malley Lumber Co,* 14 Ariz App 486; 484 P2d 639 (1971); *Mulroy v Wright,* 185 Minn 84; 240 NW 116 (1931), non-abstracter cases but relying on abstracter cases.

[11] *See* especially *Damages for Innocent Misrepresentation,* 73 Col LR 679 (1973); *Misrepresentation As Deceit, Negligence or Warranty,* 42 Harv LR 733 (1929); Prosser, *Misrepresentation and Third Persons,* 19 Vand LR 231 (1966); Green, *The Duty To Give Accurate Information,* 12 UCLA LR 464 (1965); *Should Negligent Misrepresentations Be Treated as Negligence or Fraud,* 18 Va LR 703 (1932).

[12] In a case where fraudulent intent *is* alleged, an action continues to lie in fraud. *See Smith v Holmes, supra,* 112. See also on this point, the recent lower Federal court case which allowed a $25,000 punitive damages recovery to a non-contracting consumer's group denied the speaking services of Ralph Nader through airline overbooking policies. The court found this group to be a foreseeable, relying plaintiff with respect to defendant's intentional misrepresentation. *Nader v Allegheny Airlines Inc,* 356 F Supp 128 (DCDC, 1973).

on the subject of fraud. Note the discussion of this point by Prof. Francis Bohlen in *Should Negligent Misrepresentations Be Treated As Negligence or Fraud,* 18 Va LR 703, 706–707 (1932):

"In all other fields of tort law the line is sharply drawn between intentional and unintentional injury. The persistence of this distinction can only be explained by recognizing the fact that it is in accord with the normal reactions of the mass of mankind. If negligent misrepresentation is called fraud, and, therefore, comes to be regarded by courts as tantamount thereto, there is danger that the unintentional character of the one and the intentional character of the other will be overlooked. There is danger that that liability, which is regarded both by lawyers and laymen as just where there is conscious dishonesty, will be imposed although there is no purpose to deceive. Call any two essentially different things by the same name and the two are likely to be treated as identical for all purposes."

Further, to treat this cause of action as sounding in warranty or strict liability might serve to extend an abstracter's duty beyond the duty anticipated by the original contract. It is important to repeat that the tort cause of action created by an abstracter's nonfeasance or misfeasance stems from the contractual duty originally imposed and does not render an abstracter liable for action beyond such contractually-imposed duty, *i.e.,* to perform in a diligent and reasonably skillful workmanlike manner.

Thus, we adopt the tort action of negligent misrepresentation in this context. See 1 Harper & James, The Law of Torts, § 7.6; 17 CJS, Contracts, § 154(c). It should be noted that this action is premised on negligence in title search; an abstracter is not converted into a title insurer by

virtue of our decision today.[13] We repeat that the only liability an abstracter has to an injured third-party is with respect to negligent performance of his or her contractual duty.

As to the measure of the duty required to be exercised by the abstracter, Chief Justice T. M. KAVANAGH noted in *Nash v Sears, Roebuck & Co,* *supra,* at page 142:

"Every contract of employment includes an obligation, whether express or implied, to perform in a diligent and reasonably skillful workmanlike manner."

This is clearly a form of the traditional negligence standard. Since the legal duty which, when breached, gives rise to a tort cause of action, springs from the contractual duty imposed, this *Nash* standard governs an abstracter's legal obligation to non-contracting parties. Because an abstracter is hired to determine what is in the public record, misstatements of, or failure to include, relevant items contained in that record are obviously examples of acts constituting failure to perform abstracting services in a diligent and reasonably skillful workmanlike manner.

This cause of action arising from breach of the abstracter's contractual duty runs to those persons an abstracter could reasonably foresee as relying on the accuracy of the abstract put into motion. The particular expert-client relationship accruing to a professional contract to certify the condition of the record of title reposes a peculiar trust in an abstracter which runs not only to the original

---

[13] An abstracter, obviously, is not responsible for a legal conclusion as to whether good title exists on the basis of his or her abstract. Furthermore it should be noted, for example, that an abstracter would not be liable for failure to record items not contained in the public record nor part of the contract of employment.

contracting party.[14] There is a clearly foreseeable class of potential injured persons which would obviously include grantees where his or her grantor or any predecessor in title of the grantor has initiated the contract for abstracting services with the abstracter.

## V —DEFENSE OF STATUTE OF LIMITATIONS

Defendants below were granted accelerated judgments on the basis of a plea of statute of limitations bar to this action. There is some textbook authority to the effect that the statute of limitations in an abstracter liability action begins to run from the date the abstract was furnished rather than from the time of the discovery of the error.[15]

But the textbook authority referred to is predicated upon an action *in contract,* not an action *in tort.* Consider for example, part of the applicable section in American Jurisprudence:

"[T]he statute of limitations begins to run from the time of the occurrence of the breach of duty * * * ." 1 Am Jur 2d 245.

While such a breach of duty creating a cause of action *in a contract action* would date from the actual act of omission or misrepresentation, the cause of action *in a tort action* runs from the date the tort was committed, not the date the actor put his or her force wrongfully into motion. 20 Michigan Law & Practice, Statute of Limitations, § 43; 51 Am Jur 2d, Limitations of Actions, §§ 107, 109.

---

[14] *See* Green, *The Duty To Give Accurate Information,* 12 UCLA LR 464, 483 (1965); 1 Harper & James, "The Law of Torts", § 7.6, p 546; 17 CJS, Contracts, § 154(c).

[15] 1 Am Jur 2d 245; 1 CJS, Abstracts of Titles, § 13a, p 399; 54 CJS, Limitations of Actions, § 161, p 110; Patton on Titles (2d ed) § 44, p 153, n 55.

The single case appellants rely on as authority for their statute of limitations argument, *Cushman v Avis,* 28 Mich App 370; 184 NW2d 294 (1970), was a *contract* action not involving abstracts of title and, further, did not involve a non-contracting third-party.

More relevant to the issues presented in this case is *Coury v General Motors Corp,* 376 Mich 248; 137 NW2d 134 (1965). The question presented in that case was when a cause of action accrued under the wrongful death act so as to start the running of the statute of limitations. In holding that the statute began to run only upon death and not when the death-dealing force was put into motion, Justice DETHMERS stated for a unanimous court:

"How could a right of action under the death act accrue at all if death never occurred in consequence of the injury or accrue before the occurrence of death?" 376 Mich 248, 250.

Similarly, how can a tort cause of action accrue prior to the occurrence of the tort?[16] To bar such suits prior to the date of injury, would negative, in most cases, any value of having a separate tort cause of action at all. Justice T. E. BRENNAN made this same point for a unanimous court in *Connelly v Paul Ruddy's Equipment Repair & Service Co,*

[16] This interpretation of *Coury* is supported by *1969 Annual Survey of Civil Procedure,* 16 Wayne LR 501, 509–510. The author of the Wayne Law Review article cites two lower court cases, *Gambrell v Dreis & Drump Manufacturing Co,* Civil No 32247 (ED Mich, April 25, 1969) and *Hoeppner v E W Bliss Co,* Civil No 106316 (Cir Ct Wayne Co, December 26, 1968), products liability cases, which have held that a cause of action does not accrue until the injury.

Of course, this interpretation is unnecessary in products liability cases based on breach of warranty. In those cases, MCLA 600.5833; MSA 27A.5833 provides that "the claim accrues at the time the breach of the warranty is discovered or reasonably should be discovered." *Coury* can be thought of as speaking generally to MCLA 600.5827; MSA 27A.5827 the general provision on accrual of claims.

388 Mich 146, 150; 200 NW2d 70 (1972), noting
that running the statute of limitations from the
day the tortious force was put into motion would
destroy plaintiff's cause of action before it even
arose. 388 Mich 146, 150. He also noted that:

"In the case of an action for damages arising out of
tortious injury to a person, the cause of action accrues
when all of the elements of the cause of action have
occurred and can be alleged in a proper complaint.
   "Those elements are four in number:
   "(1) The existence of a legal duty by defendant
toward plaintiff.
   "(2) The breach of such duty.
   "(3) A proximate causal relation between the breach
of such duty and an injury to the plaintiff.
   "(4) The plaintiff must have suffered damages."

Under these standards, is there a tort cause of
action accruing before plaintiff has knowledge, or
should have knowledge, of the negligent misrepre-
sentation? We think not.

General tort law principles in Michigan as dis-
cussed *supra,* support our determination that the
statute of limitations does not begin running until
the point where plaintiff knows or should have
known of this negligent misrepresentation. At that
point, the four elements in *Connelly, supra,* are
satisfied: a legal duty exists, such duty is breached,
a proximate causal relation is established (if plain-
tiff can show reliance on the abstract),[17] and the
plaintiff then is, or should be, aware of any resul-
tant damages.[18]

---

[17] *Cf. Randall v Paine-Nichols Abstract Co,* 205 Okla 430; 238 P2d
319; 28 ALR2d 887 (1951).

[18] The Michigan Court of Appeals in this case quoted with approval
from *Hillock v Idaho Title & Trust Co,* 22 Idaho 440, 449; 126 P 612,
615 (1912) to the same effect. While the Idaho Court adopted a *fraud*
rationale and we a *misrepresentation* rationale, we agree with that
Court's quotation as regards the statute of limitations:

## VI —CONCLUSION

For the reasons outlined above, we hold that there is a valid tort cause of action in the nature of negligent misrepresentation arising from a contract for an abstracter's services in favor of a noncontracting damaged third-party whose reliance on the abstract could be foreseen. In a tort action of this nature, the statute of limitations begins running from the date the injured party knew or should have known of the existence of the negligent misrepresentation, a date not clearly in evidence in this case. The accelerated judgment granted by the trial court was thus improper.

The judgment of the Court of Appeals is affirmed. This case is remanded to Macomb County Circuit Court for further proceedings not inconsistent with this opinion. Costs to the appellees.

T. M. KAVANAGH, C. J., and T. G. KAVANAGH and SWAINSON, JJ., concurred with WILLIAMS, J.

### *APPENDIX A*

### CURRENT STATUS OF ABSTRACTER'S LIABILITY IN JURISDICTIONS OTHER THAN MICHIGAN

c = case law
s = statute

---

" 'If the statute runs in favor of the abstractor from the delivery of the abstract, the company would be released long before the falsity of the abstract could reasonably be discovered by the purchaser. This would not be justice, and ought not to be the law.' " 43 Mich App 95, 98.

The *Hillock* language was also cited with approval by the Texas Appellate Court in *Chicago R I & G R Co v Duncan, supra,* n 10.

| I—NO CASES OR STATUTES ON POINT | Alaska<br>Connecticut<br>Delaware<br>Georgia<br>Kentucky<br>Maine<br>Massachusetts<br>Mississippi<br>New Hampshire<br>North Carolina<br>Rhode Island<br>South Carolina<br>Vermont<br>Virginia<br>West Virginia<br>(15 Jurisdictions) |
|---|---|
| II—STRICT CONTRACTUAL PRIVITY REQUIRED | Arizona (c)***<br>California (c)**<br>Florida (c)<br>Illinois (s, c)*<br>Ohio (c)*****<br>Texas (c)**<br>Wisconsin (c)<br>(7 Jurisdictions) |
| III—RECOVERY BY KNOWN THIRD-PARTIES | Alabama (c)<br>District of Columbia (c)<br>Hawaii (c)**<br>Idaho (s, c)**<br>Indiana (c)<br>Maryland (c)<br>Missouri (c)*<br>New Jersey (c)*<br>New York (c)****<br>Pennsylvania (c) |

Tennessee (c)*
(11 Jurisdictions)

---

| | |
|---|---|
| IV—RECOVERY BY UNDISCLOSED PRINCIPALS | Iowa (c)<br>Washington (c)<br>(2 Jurisdictions) |

---

| | |
|---|---|
| V—LIABILITY EXTENDED BEYOND PRIVITY TO "ANY PERSON" RELYING ON THE ABSTRACT (NOT EXPLICITLY IN TORT) | Arkansas (s)<br>Colorado (s)<br>Kansas (s, c)<br>Minnesota (s)*<br>Montana (s)<br>Nebraska (s, c)<br>Nevada (s)<br>New Mexico (s, c)<br>North Dakota (s, c)<br>Oklahoma (s, c)<br>Oregon (s)<br>South Dakota (s, c)<br>Utah (s)<br>Wyoming (s)<br>(14 Jurisdictions) |

---

| | |
|---|---|
| VI—TORT LIABILITY | Louisiana (c)<br>(1 Jurisdiction) |

---

* In these jurisdictions, cases in analogous contexts (generally accountant's or surveyor's liability) have adopted a forseeability standard (columns V or VI). See Appendix B.

** In these jurisdictions, Courts have adopted a tort rationale, but with respect to this analysis, only in dicta, as the prevailing plaintiffs either contracted for the abstract or were known third-party beneficiaries. See Appendix B.

*** This jurisdiction does contain a non-abstracter case recognizing the tort of negligent misrepresentation relying on abstracter cases. See Appendix B.

**** See Appendix B for details.

***** A later Ohio Court of Appeals case granted recovery to an undisclosed principal; the earlier Ohio Supreme Court case has been treated as controlling. See Appendix B.

*APPENDIX B*

Following is a jurisdictional analysis of abstracter's liability in each of the 50 states and the District of Columbia.

*ALABAMA*

While both *Abstract & Title Guaranty Co v Kigin,* 21 Ala App 397; 108 So 626 (1926), and *Shine v Nash Abstract & Investment Co,* 217 Ala 498; 117 So 47 (1928), stand for the requirement of strict privity in their express language, there is reference in *Shine* to the exception created when the abstracter has notice that the abstract purchaser is acting for a third-party (217 Ala 498, 501; 117 So 47, 49).

*ALASKA*

Alaska appears to have no statutory or case law on this point.

*ARIZONA*

Arizona recognized in dicta a number of exceptions to the requisite of strict privity but decided the case on privity in *Phoenix Title & Trust Co v Continental Oil Co,* 43 Ariz 219; 29 P2d 1065 (1934). In *Arizona Title Insurance & Trust Co v O'Malley Lumber Co,* 14 Ariz App 486; 484 P2d 639 (1971), Arizona recognized the tort action of negligent misrepresentation in a business situation not involving an abstracter, but citing Restatement Torts (2d) § 552 and abstracter cases from other jurisdictions.

*ARKANSAS*

In *Talpey v Wright,* 61 Ark 275; 32 SW 1072 (1895), direct privity was required as a basis for suit against an abstracter though there was language supportive of extension of this cause of action to known third-parties (61 Ark 275, 282; 32

SW 1072, 1074). *Adam v Greer,* 114 F Supp 770 (WD Ark, 1953), continued to hold to the general rule of privity noting that the issue of tort or contract was not reached as unnecessary to the disposition of the instant case (114 F Supp 770, 775). In 1969, Ark Stats Ann 71-106 was added creating an abstracter's bond to cover any damages sustained by "any person * * * for whom said applicant may compile, make or furnish abstracts". No cases interpret this language.

## CALIFORNIA

In *Hawkins v Oakland Title Insurance & Guaranty Co,* 165 Cal App 2d 116; 331 P2d 742 (1958), the tort theory of Restatement Torts (2d) § 552 was adopted but plaintiff was the abstract purchaser not a third-party. *Viotti v Giomi,* 230 Cal App 2d 730; 41 Cal Rptr 345 (1964), stands for the proposition that recovery is now available in contract or tort (citing *Hawkins)* but again, no unknown third-party was involved. *Colonial Savings & Loan Association v Redwood Empire Title Co,* 236 Cal App 2d 186; 46 Cal Rptr 16 (1965) unencouragingly raised the possibility of suit by a known third-party grantee.

## COLORADO

Colo Rev Stats 1963 Ch 1-1-5 creates a cause of action on an abstracter's bond for "any person" against an abstracter on account of his or her "error, deficiency, or mistake". This statute has been in effect since 1929.

## CONNECTICUT

Connecticut appears to have no statutory or case law on this point.

## DELAWARE

Delaware appears to have no statutory or case law on this point.

## DISTRICT OF COLUMBIA

While *Long v American Savings & Loan Association,* 151 A2d 770 (DC Mun Ct App, 1959) held that an abstracter's liability action was clearly in contract not tort, *Doonis v Mutual Title Co,* 196 A2d 480 (DC App, 1964) went further than strict privity on its facts, extending liability to third-party grantee plaintiffs, saying that a grantee who had paid a $100 settlement charge was a co-employer, although seller had actually employed the abstracter.

## FLORIDA

Florida requires strict privity to maintain an abstracter's liability action. An unknown third-party was denied recovery in *Sickler v Indian River Abstract & Guaranty Co,* 142 Fla 528; 195 So 195 (1940).

## GEORGIA

Georgia appears to have no statutory or case law on this point.

## HAWAII

In the first and only case on point, Hawaii moved in *Chun v Park,* 51 Hawaii 462; 462 P2d 905 (1969) to a tort liability following the rationale of Restatement 2d Torts § 552 in favor of a known third-party.

## IDAHO

In the leading case of *Hillock v Idaho Title & Trust Co,* 22 Idaho 440; 126 P 612 (1912) involving the purchaser of an abstract against the abstracter, Idaho moved to a tort cause of action in abstracter liability cases. The Court held the statute of limitations began to run when the fault in the abstract was discovered. Idaho Code § 54-101 had, since 1897, extended liability to "any person" injured by an abstracter's negligence and this

approach was upheld in *Merrill v Fremont Abstract Co,* 39 Idaho 238; 227 P 34 (1924).

## *ILLINOIS*

In *Chase v Heaney,* 70 Ill 268 (1873), the language refers to any injured party while the facts of the case showed recovery by a plaintiff-purchaser of the abstract. Ill Ann Stats Chpt 115 § 25 clearly makes abstracters liable to purchasers of abstracts (since 1903). *Rozny v Marnul,* 43 Ill 2d 54; 250 NE2d 656; 35 ALR3d 487 (1969), a surveyor's case citing abstracter case precedent, moved Illinois clearly into the tort arena, abolishing the privity concept and accepting the tort cause of action arising from the breach of a contractual duty. *See generally* 1 Ill Digest (3d ed), Abstracts of Title § 5.

## *INDIANA*

In *Brown v Sims,* 22 Ind App 317; 53 NE 779 (1899), the strict privity rule was held inapplicable where the abstracter has knowledge of a third-party relying on the abstract.

## *IOWA*

Iowa has ruled a cause of action against an abstracter to be in contract since before the turn of the century. *Russell & Co v Polk County Abstract Co,* 87 Iowa 233; 54 NW 212; 43 Am St Rep 381 (1893). But in an interesting case the Court found the abstracter liable in contract to the undisclosed principal of an agent who purchased the abstract. *Young v Lohr,* 118 Iowa 624; 92 NW 684 (1902). And a recent case, *Ryan v Kanne,* 170 NW2d 395 (Iowa, 1969), an accountant's liability case portends a move to some sort of foreseeability standard under Restatement Torts 2d § 552, although the case required only a finding that it was a known third-party.

## KANSAS

On the basis of the old Kansas abstracter legislation, the requirement of strict privity was closely followed. *Mallory v Ferguson,* 50 Kan 685; 32 P 410; 22 LRA 99 (1893); *Symns v Cutter,* 9 Kan A 210; 59 P 671 (1900); *Allen v Hopkins,* 62 Kan 175; 61 P 750 (1900). But in *Arnold & Co v Barner,* 91 Kan 768; 139 P 404 (1914), the new Kansas abstracter bond statute (now Kans Stat Ann 58-2802) was held to broaden liability to "any person" regardless of who paid for the abstract, but the statute of limitations ran from the date of furnishing the abstract.

## KENTUCKY

Kentucky appears to have no statutory or case law on this point.

## LOUISIANA

In Louisiana, the Register of Conveyances has the responsibility of issuing certificates of title showing the existence of all encumbrances. La Civ Code, Art 2251 *et seq.* Under this statute, Louisiana case law has moved from the strict privity requirement of *Morano v Shaw,* 23 La Ann 379 (1871) to the foreseeability test illustrated in *American Legion Ed Brauner Post No 307, Inc v Southwest Title & Insurance Co,* (La App, 1968) 207 So 2d 393, *rev'd on other grds,* 218 So 2d 612 (1969). In *American Legion,* the Register of Conveyances was found liable not only to the purchasing grantee but also to the unknown, relying grantor and title insurer.

## MAINE

Maine appears to have no statutory or case law on this point.

## MARYLAND

In *Watson v Calvert Building & Loan Association,* 91 Md 25; 45 A 879 (1900); *Wlodarek v Thrift,*

178 Md 453; 13A2d 774 (1940); and *Corcoran v Abstract & Title Co of Maryland,* 217 Md 633; 143 A2d 808 (1958), an abstracter action was held to be limited to strict contractual privity though in *Watson* plaintiff recovered though his agent was the abstract purchaser.

## MASSACHUSETTS

There appears to be no statutory or case law with respect to abstracter liability.

## MICHIGAN

In *Smith v Holmes,* 54 Mich 104; 19 NW 767 (1884), it was stated that an abstracter's liability action was an action based on negligent performance of a contract. *Kenyon v Charlevoix Improvement Co,* 135 Mich 103; 97 NW 407 (1903) noted, in dicta, the requisite of strict privity. But *Beckovsky v Burton Abstract & Title Co,* 208 Mich 224; 175 NW 235 (1919) found privity where plaintiff was probably a third-party grantee. See discussion in body of opinion, *supra.*

## MINNESOTA

In *Mulroy v Wright,* 185 Minn 84; 240 NW 116 (1931), Minnesota moved to note the irrelevance of the privity concept following the reasoning of *Glanzer, supra,* and moving to a tort analysis. There the actual defendant was not an abstracter but a city official who furnished the abstracter erroneous information. Plaintiff was the buyer of property from owner who ordered abstract. Minn Stat Ann § 386.66 has limited though the amount of damages recoverable by "any person" so injured to the amount of the abstracter's bond, $25,000.

## MISSISSIPPI

Mississippi appears to have no statutory or case law on this point.

### MISSOURI

In *Zweigardt v Birdseye,* 57 Mo App 462 (1894), and *Schade v Gehner,* 133 Mo 252; 34 SW 576 (1896), Missouri Courts stuck by the absolute privity requirement even where the abstracter had knowledge of affected third-parties. *Anderson v Boone County Abstract Co,* 418 SW2d 123; 34 ALR 3d 1111 (Mo, 1967), reaffirmed these holdings. But *Slate v Boone County Abstract Co,* 432 SW2d 305 (Mo, 1968) created an exception with respect to known third-party "beneficiaries", and, most recently, *Aluma Kraft Manufacturing Co v Elmer Fox & Co,* 493 SW2d 378 (Mo App, 1973), an accountant's liability case, cited *Anderson* and *Slate* in moving to a balancing test involving foreseeability. *See also Thorne v Johnson,* 483 SW2d 658 (Mo App, 1972), which involved suit by owner and his grantees and their grantees against a negligent abstracter. An unfavorable judgment on the pleadings against liability was reversed.

### MONTANA

In *Western Loan & Savings Co v Silver Bow Abstract Co,* 31 Mont 448; 78 P 774 (1904), it was held that privity was required but the exception was noted where the abstracter has knowledge of plaintiff. Since the decision in that case, Montana adopted Mont Rev Code § 66-2113 which creates a cause of action on an abstracter's bond of $5,000 "for the use of any owner, mortgagee or other person having an actual interest in the real estate covered by an abstract of title". The constitutionality of this statute was upheld by *State ex rel Freeman v Abstracters Board of Examiners,* 99 Mont 564; 45 P2d 668 (1935).

### NEBRASKA

The early Nebraska rule with respect to abstracter's liability was on the order of strict priv-

ity. *Thomas v Carson,* 46 Neb 765; 65 NW 899
(1896). However, passage of the predecessor to Rev
State Neb § 76-501 changed Nebraska law extend-
ing liability to "any party" suffering damages.
*Gate City Abstract Co v Post,* 55 Neb 742; 76 NW
471 (1898); *Crook v Chilvers,* 99 Neb 684; 157 NW
617 (1916); *Ehlers v Pound,* 176 Neb 673; 126
NW2d 893 (1964); *Marley v McCarthy,* 129 Neb
880; 263 NW 385 (1935).

## NEVADA

Nevada, since 1927, has had a statute equivalent
to the current Nev Rev Stats Title 19, § 240.330
which extends abstracters' liability "[f]or any mis-
conduct or neglect in any of the matters in which
any commissioned abstracter * * * , is authorized
to act, he shall be liable on his official bond to the
person or persons injured thereby for all damages
sustained."

## NEW HAMPSHIRE

There appears to be no statutory or case law on
this specific point in New Hampshire.

## NEW JERSEY

The early case of *Economy Building & Loan
Association v West Jersey Title & Guarantee Co,*
64 NJL 27; 44 A 854 (1899) relaxed the strict
privity requirement with respect to agents and
third-party beneficiaries.

## NEW MEXICO

New Mexico Stat Ann § 70-2-6 and its predeces-
sors extend abstracters' liability to "any person
* * * acting in faith and reliance upon an ab-
stract." *Gallegos v Ortiz,* 28 NM 598; 216 P 502
(1923). Interestingly, the New Mexico abstracter
statute has its own six year statute of limitations.
New Mex Stat Ann § 70-2-7.

*NEW YORK*

*Glawatz v People's Guaranty Search Co,* 49 App Div 465; 63 NYS 691 (1900) denied recovery to a subsequent grantee for lack of privity. In *Glanzer v Shepard,* 233 NY 236; 135 NE 275; 23 ALR 1425 (1922) then Judge Cardozo in a weigher's case allowing recovery by an unknown third-party beneficiary applied the same liability in dicta to abstracters. In *Cole v Vincent,* 229 App Div 520; 242 NYS 644 (1930), the Appellate Division said recovery by a third-party beneficiary would depend upon a jury decision as to whether or not the abstracter could be charged with knowledge his abstract would be relied on by someone in addition to the purchaser thereof. Next came *Ultramares v Touche,* 255 NY 170; 174 NE 441; 74 ALR 1139 (1931) where then Judge Cardozo limited the rule of foreseeability he set forth in *Glanzer* in an accountant's case. In *Goodman v Title Guarantee & Trust Co,* 206 NYS2d 32; 11 App Div 2d 1003 (1960), in a case where a potential buyer of plaintiff's property ordered an abstract from defendant abstracter and was deterred from buying because the abstract falsely showed weakness and where the abstracter "had knowledge of the terms of the contract and knew the purpose to which the report would be put", the Court allowed an action in fraud. It used fraud because unless "negligence so reckless as to justify a finding that the defendant had no knowledge of or genuine belief in [the] accuracy" of the abstract, there could be no recovery under *Ultramares* unless privity. Subsequently, the New York Supreme Court in *Cecala v Title Guarantee Co,* 45 Misc 2d 986; 258 NYS2d 464 (1965) relied on *Goodman* to allow suit in fraud for "gross errors" in a title search in a case involving plaintiff owner of property suing the

abstracter for a false abstract delivered to him—no question of privity.

### *NORTH CAROLINA*

North Carolina appears to have no statutory or case law on this point.

### *NORTH DAKOTA*

Though ND Cent Code § 43-01-11 and its predecessors have, since 1889, expanded an abstracter's liability to "any person", it is nonetheless clear that in North Dakota, the cause of action remains in contract not in tort and that this is not a fraud cause of action with the element of intent constructively supplied. *Commercial Bank of Mott v Adams County Abstract Co,* 73 ND 645; 18 NW2d 15 (1945) (third-party purchaser cause of action against abstracter).

### *OHIO*

In *Thomas v Guarantee Title & Trust Co,* 81 Ohio St 432; 91 NE 183 (1910), Ohio stuck by the requirement of strict contractual privity. But a later Court of Appeals decision extended privity to an apparent undisclosed principal on an agency theory. *Bowden v Meade,* 1 Ohio L Abs 596 (1923).

### *OKLAHOMA*

Under Okla Stat Ann Title 1 § 1, it has been clear in Oklahoma for a long time that an abstracter is liable to "any person" for his or her negligent preparation of an abstract. *Scott v Jordan,* 55 Okla 708; 155 P 498 (1916). But reliance must be shown on the abstract to recover. *Randall v Paine-Nichols Abstract Co,* 205 Okla 430; 238 P2d 319; 28 ALR2d 887 (1951). It is clear though that such an action remains in contract not in tort and the statute of limitations begins with delivery of the abstract. *Garland v Zebold,* 98 Okla 6; 223 P 682 (1924).

*OREGON*

Since 1923, Oreg Rev Stats § 30.750 has extended abstracter's liability to "any person" injured by negligent workmanship. But the Oregon statute allows written limitation of liability if expressly written into the abstract certificate.

*PENNSYLVANIA*

Pennsylvania has a long line of cases supportive of the retention of the privity requirement. *M'Caraher v Commonwealth,* 5 Watts & S 21; 39 Am Dec 106 (1842); *Commonwealth ex rel Kellogg v Harmer,* 6 Phila 90; 22 Phila Leg Int 76 (1865); *Houseman v Girard Mutual Building & Loan Association,* 81 Pa 256; 2 WNC 573; 33 LI 108 (1876); *Siewers v Commonwealth,* 87 Pa 15 (1878); *Henkels v Philadelphia Title Insurance Co,* 177 Pa Super 110; 110 A2d 878 (1955). But there is authority noting an exception where the abstracter knew of a third-party relying on the abstract. *Peabody Building & Loan Association v Houseman,* 89 Pa 261; 11 WNC 193; 34LI 5; 33 Am Rep 757 (1879).

*RHODE ISLAND*

Rhode Island appears to have no statutory or case law on this point.

*SOUTH CAROLINA*

South Carolina appears to have no statutory or case law on this point.

*SOUTH DAKOTA*

SDCL § 36-13-15, the South Dakota abstracter bond statute runs to "any person" injured by an abstracter's negligence. *Stephenson v Cone,* 24 SD 460; 124 NW 439 (1910). This statute in one form or another dates back to 1889. But the cause of action under this statute is clearly in contract. *DuPratt v Black Hills Land & Abstract Co,* 81 SD 637; 140 NW2d 386 (1966).

*TENNESSEE*

In a series of noted cases, *Dickle v Abstract Co,* 89 Tenn 431; 14 SW 896 (1890); *Denton v Nashville Title Co,* 112 Tenn 320; 79 SW 799 (1903); *Equitable Building & Loan Association v Bank of Commerce & Trust Co,* 118 Tenn 678; 102 SW 901 (1907), Tennessee stuck to the theory of strict privity with the exception of third-party grantees the abstracter knew about. In *Tartera v Palumbo,* 224 Tenn 262; 453. SW2d 780 (1970), a surveyor case, a tort theory of liability was adopted citing *Glanzer, supra,* and Restatement Torts (2d) § 552.

*TEXAS*

Originally an abstracter's liability was in contract in Texas. *Decatur Land, Loan & Abstract Co v Rutland,* 185 SW 1064 (Tex Civ App, 1916). The leading case of *Chicago R I & G R Co v Duncan,* 273 SW 908 (Tex Civ App, 1925) moved to a tort cause of action though plaintiff was the purchaser of the misrepresented abstract.

*UTAH*

Utah Code Ann § 1-1-12 creates a specific cause of action for "any person" damaged by an abstracter's negligence. This statute has been in effect since 1937.

*VERMONT*

Vermont appears to have no statutory or case law on this point.

*VIRGINIA*

Virginia appears to have no statutory or case law on this point.

*WASHINGTON*

Washington has, in this context, reaffirmed the contractual nature of this cause of action and limited liability to those in privity in *Bremerton Development Co v Title Trust Co,* 67 Wash 268;

121 P 69 (1912) and *Douglas v Title Trust Co,* 80 Wash 71; 141 P 177 (1914). An exception has been noted with respect to relying third-parties. *Anderson v Spriestersbach,* 69 Wash 393; 125 P 166 (1912) (abstracter both knew and delivered the abstract to third-party beneficiary). While purporting to adhere to *Anderson,* a later case allowed recovery in contract against an abstracter who prepared an abstract for plaintiffs' attorneys without any knowledge of the agency whatsoever. *Murphy v Fidelity Abstract & Title Co,* 114 Wash 77; 194 P 591 (1921).

## *WEST VIRGINIA*

West Virginia appears to have no statutory or case law on this point.

## *WISCONSIN*

In *Peterson v Gales,* 191 Wis 137; 210 NW 407; 47 ALR 956 (1926), the requirement of strict privity was established in Wisconsin in strong dicta.

## *WYOMING*

Wyo Stat § 33-12 has, since 1890-1, extended an abstracter's liability to "any person." *See generally Abstracter's Liability in Examination of Title,* 6 Wyo LJ 184 (1952).


M. S. COLEMAN, J. *(dissenting).* Although it characterizes plaintiff's cause of action as "arising from breach of an abstracter's contractual duty", the majority opinion adopts a "tort action of negligent misrepresentation in this context". The effect and purpose of this adoption is to delay the running of the statute of limitations.

I cannot agree with the theory or the result.

I agree with the majority that plaintiffs' action is premised on a breach of contractual duty. MCLA 600.5807, MSA 27A.5807 says:

"No person may bring or maintain any action to recover damages or sums due for breach of contract * * * unless, after the claim first accrued to himself *or to someone through whom he claims*, he commences the action within the periods of time prescribed by this section.

* * *

"(8) The period of limitations is 6 years for all other actions to recover damages or sums due for breach of contract."

When did plaintiffs' claim accrue? The answer is found in MCLA 600.5827, MSA 27A.5827 which provides, insofar as applicable to these facts,

"[T]he claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results."

Plaintiff's claim thus accrued, at the very latest, in 1959, although no specific date was alleged. Suit was not filed until 1971.

To avoid application of this unambiguous legislative directive, the Court today adopts a theory which razes the structure of contract law. Prompting this destruction is a desire to afford plaintiffs an opportunity to recover damages after the applicable statute of limitations has foreclosed suit. I repeat a concern expressed in *Rizzo v Kretschmer*, 389 Mich 363; 207 NW2d 316 (1972). By so altering the law "to fit a single desired result this Court would force Michigan courts to apply the distortion here wrought to all future cases." (p 381.)

The Legislature is entitled to place limitations upon the bringing of actions in the courts of this state. Indeed, it is the duty of the Legislature to impose jurisdictional limitations in such matters. There is such a limitation applicable to the facts of this case.

The majority cites examples of a number of states which have legislation purporting to do what would be done here by judicial fiat. I thoroughly agree that we should give "judicial support of legislation" when possible. In fact, that is the point of this dissent. Michigan has no such statute and we should not attempt to provide such by judicial action.

I repeat what was written in dissent in *Dyke v Richard,* 390 Mich 739; 213 NW2d 185 (1973): "Although individuals may differ as to the wisdom of the legislation, it is not our function to rewrite it." I would reverse the Court of Appeals and affirm the circuit court's grant of accelerated judgment.

LEVIN and J. W. FITZGERALD, JJ., did not sit in this case.